CRIPPEN, SHERIFF, v. MINT SALES CO.*

(In Banc.   April 20, 1925.)

[103 So. 502.   No. 24715.]

1. GAMING. *Vending machine held a gambling device; a "slot machine or similar device."*

A machine worked by placing a nickle or trade check in a slot and pulling a lever, and which on each operation gives the player a uniform package of mints, and perhaps trade checks, varying in number up to twenty, each good for five cents in trade, *held* a gambling device, a "slot machine or similar device," prohibited by Laws 1924, chapter 339.

2. GAMING. *Vending machine held not to "indicate in advance what purchaser is to receive on each operation."*

Though a machine for vending uniform packages of mint, with an occasional bonus of from two to twenty trade checks, worked by placing a nickle in a slot, and pulling a lever, shows before a nickle is placed in it what is to be got therefor, the showing varying after each play, and the same player being entitled to continue, it does not "indicate in advance what the purchaser is to receive on each operation of the machine," within the exception to Laws 1924, chapter 339, prohibiting operation of slot machine or similar devices.

ETHRIDGE and ANDERSON, JJ., dissenting.

―――――

*Headnotes 1. Gaming, 27 C. J., Section 101; 2. Gaming, 27 C. J., Section 101.

APPEAL from chancery court of Leflore county.
HON. C. L. LOMAX, Chancellor.

Suit for injunction by the Mint Sales Company against E. H. Crippen, Sheriff. Decree for complainant, and defendant appeals. Reversed, and bill dismissed.

*H. M. Bryan,* Assistant Attorney-General, for appellant.

Appellee relies upon chapter 339 of the Laws of 1924, to sustain the legality of the particular machine here under review. It will be noted that by chapter 239 of the Laws of 1922, the legislature repealed outright section 3786 of the Code of 1906 (Hemingway's Code, sec. 6486), as well as "all laws and parts of laws in conflict" therewith. It is our contention that the language, "slot machine, or similar devices," condemned by chapter 339, Laws of 1924, includes the kind of machine described in the record in this case.

The proviso in the act to the effect that its penal provisions shall not apply to "automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine" is applicable and applicable alone to the things specifically comprehended under the term "vending machines." If the machine of appellee is a vending machine and nothing more, clearly it has been legalized. However, if the vending machine has as adjuncts thereto any feature or features that would convert it into a game of chance, then it is a gambling device regardless of its name.

We think that the question of whether or not this particular machine is a gambling device does not depend upon what it will do on a single operation of the machine, but that if it encourages one to continue to play it with the possibility of receiving more or less in value than he began with, it has been converted into a game of chance and is gambling outright. As such, the legislature did not expressly or by implication legalize its operation.

It is our contention that the use of the machine here under review violates chapter 339 of the Laws of 1924, as aforesaid, as well as our general gambling statutes, particularly section 933, Hemingway's Code. Further, we contend that such machine violates section 98 of the constitution which forbids lotteries, etc.

Further, we contend that as gambling devices, law enforcement officers are expressly authorized to seize them

and to destroy them, under section 939 of Hemingway's Code. A lottery has been variously defined by courts of last record and possibly, while associate counsel will brief this phase of the question for the court, we do desire to submit the following authorities, showing that slot machines involving hazard or chance have been definded as lotteries. *Prendergast* v. *State,* 57 S. W. 850, and *City of New Orleans* v. *Collins,* 27 So. 532; Bouvier's Law Dictionary, 3d Revision.

Therefore, even if under any construction chapter 339 of the Laws of 1924, could be held to sanction the operation of such machine, the legislature would be without power to enact it in the face of the specific constitutional prohibition. See the following recent cases: *Pure Mint Company* v. *Labarre et al.* (N. J.), 125 Atl. 105; *Tonahill* v. *Molony, Supt. of Police,* 101 So. 130.

In *State* v. *Johnson* (Okla.), 177 Pac. 926, it was directly held that such machines were gambling devices, citing and relying upon the cases of *Ferguson* v. *State,* 176 Ind. 568, 99 N. E. 806, 42 L. R. A. (N. S.) 720, Ann. Cas. 1915 C. 172; *McTeer* v. *State,* 129 Tenn. 536, 167 S. W. 121; *State* v. *Googan,* 117 Me. 102, Atl. 920, and *Allen* v. *Commonwealth,* 178 Ky. 250, 198 S. W. 896. To the same effect was the decision in the *Commonwealth* v. *Critten* (Ky.), 202 S. W. 884, and in the last case of *Zaft et al.* v. *Milton* (N. J.), 126 Atl. 29; *Griste* v. *Burch* (So. Carolina), 99 S. E. 703.

In the case at bar, appellee sought the aid of a court of conscience to restrain a law enforcement officer from proceeding to interfere with the operation of a machine which many courts of last resort have held to be gambling devices. It ill behooves one to come into a court of conscience and there ask for a remedial writ to restrain an officer from interfering with gambling.

The machine in question thus being clearly a gambling device in fact, and operated in this state contrary to our constitution and law, the learned lower court erred in making the injunction perpetual and we respectfully ask that a decree be entered here dissolving the same.

*Means Johnston,* also for appellant.

OPERATION OF SLOT MACHINES AS GAMBLING DEVICES WHICH INDICATED IN ADVANCE WHAT THE PURCHASER IS TO RECEIVE AND WHERE PLAYER IS NOT SUBJECT TO LOSS. The supreme court of Indiana, in *Ferguson* v. *State,* 42 L. R. A. (N. S.) 720, 99 N. E. 806, held that a slot machine, which delivered an article of merchandise worth the coin deposited, and sometimes, in addition thereto trade checks, and which machine indicated in advance to the purchaser on each operation of the machine, what he is to receive—is a gambling device, and prohibited by the statutes of that state. See to same effect *Welch* v. *Kentucky,* 200 S. W. 371; *State* v. *McTeer,* 129 Tenn. 535, 167 S. W. 121.

The contention was made in that case, as here, that it was not a gambling device, because the indicator always showed what the player was to get before he deposited his nickle, and for that reason there could have been no element of uncertainty or chance in playing the machine. In rejecting this contention the court declared that while upon depositing the first nickle, the player might know exactly what he was to receive from the machine in return, yet the indicator at the end of the play might show that the next nickle deposited, instead of drawing only a package of gum, might draw in addition a package of gum and one dollar's worth in checks. In this connection it is in the opinion said: "The lure is the opportunity of winning from ten to one hundred cents by the deposit and expenditure of five cents. There must at least be one play before any of the numbers mentioned are shown on the indicator, and there may be many, and it is not known which number will appear, nor at what time, nor after how many plays . . . However, there is always a chance that any single player, by the expenditure of ten cents through making two plays of five cents each, may obtain not only a package of gum worth five cents, but checks from ten cents to one

hundred cents. In *People ex rel. Verchereau* v. *Jennings,* 153 App. Div. 512, 138, N. Y. Supp. 449, the same conclusion was reached, the slot machine being the same that we have in the instant case. See, too, *Moberly* v. *Deskin,* 169 Mo. App. 677, 155 S. W. 842; *Cullian* (Supp.) 114 App. Div. 654, 99 N. Y. Supp. 1097; *Cagle* v. *State,* 93 So. 206; *Pure Mint Co.* v. *Labarre et al.,* 125 Atl. 105, (New Jersey); *Tonahill* v. *Molony,* 101 So. 130; *Griste* v. *Burch,* 99 S. E. 703; *State* v. *Googin,* 117 Maine, 102, 102 Atl. 970.

I have confined myself to the citation only of that class of cases, in support of my contention that the machine in question belonging to appellee and operated by the said Dave Smith, was a gambling device to those certain cases of like kind and description, wherein the player was not subjected to loss, and wherein the player sometimes stood a chance of securing additional trade checks good for merchandise, and wherein the machine indicated in advance to the purchaser or operator thereof what he was to receive on each operation of the machine.

I only found one decision, wherein the court, in passing upon a machine of like kind and description held that it was not a gambling device, and took issue with the universal sound reasoning of all of the other courts of last resort; this case was *Byke* v. *Enright, Police Commissioner,* 203 N. Y. Supp. 296, which was a lower court of record, and which decision conflicts with the reasoning in *People ex rel. Verchereau* v. *Jennings,* 153 App. Div. 512, *supra,* and all of the other courts of last resort. A large number of decisions have condemned similar slot machines and devices, wherein the player always received an article of merchandise of a certain value, and sometimes, in addition trade checks. *Land* v. *Merwin,* 99 Maine, 486, 39 Atl. 1021, 105 A. S. R. 293; *Myer* v. *State,* 112 Ga. 20, 37 S. E. 96, 81 A. S. R. 17, 51 L. R. A. 496; *Lytle* v. *State* (Texas), 100 S. W. 1160; *State* v. *Vasquez* (Florida), 38 So. Rep. 830.

## II.

It is contended by appellee that his machine was expressly legalized by chapter 339 of the Laws of 1924, and the lower court so held, and that prior to the enactment of chapter 339 of the Laws of 1924, he would have no standing in this court, and that his machine would be classed as a gambling machine, therefore the decisions that I have cited for the consideration of this court do not apply, because they are based on general and special legislation condemning gaming devices.

I submit to the court, the following proposition: That legislation and policies of long standing, for the preservation of the morals of its citizens should not be overturned:—

(1) By a doubtful interpretation.

(2) Must not be overturned except by clear and unambiguous language.

(3) It must clearly appear that the statute under consideration is clearly repugnant to the act, and that both cannot be given effect.

(4) That any statute passed in derogation of the long established policy of the state for the preservation of its morals, must be strictly construed.

(5) That the court will never presume that the legislature intended to repeal legislation of long standing for the preservation of the morals of its citizens.

(6) That if said chapter is susceptible of two constructions, one in favor of the policy of long standing, and the other against it, it is the duty of the court to adopt that in favor of the legislation of long standing passed for the preservation of the morals of its citizens.

(7) That said chapter should not be construed solely by its own words but upon enactment must be a part of and is to be read in connection with the whole body of the law, and its interpretation is to be in the light of the general policy of previous legislation and of the long established principles of law and equity.

*Osborn & Witty,* for appellee.

We say that the machine is precisely described and is specifically legalized by chapter 339 of the Laws of 1924. Does chapter 339 of the Laws of 1924 describe and legalize the machine in controversy? Much has been said in the briefs for appellant to the effect that the operation of this machine is against the public policy of Mississippi. This contention has been ably answered by our associates, and we will not burden the court with any extended discussion of this point. Suffice it to say that it is an elemental principle that the public policy of any state is determined by the acts of its legislature, if such acts be not in conflict with the constitution of that state." Congress has no power not confided in it. A legislature has all power not withheld from it." *State* v. *Henry,* 40 So. 154.

The attorney-general in his diligence to present appellant's case, argues that in spite of the Law of 1924, this machine is outlawed by section 935 of Hemingway's Code, which is the statute prohibiting gambling in general. It is perfectly plain, of course, that even though this machine was condemned under the general law prohibiting gambling, that if it be legalized by the Law of 1924, enacted subsequent to the passage of the general gambling law, of course the later Law of 1924 would control.

Let it be noted that by chapter 239 of the Laws of 1922, all slot machines of every kind were condemned. The Law of 1924 is an exact rescript of the Law of 1922, except for its proviso which is the storm-center here, and which provides that it shall be perfectly legal to operate "automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine." The same legislature which used that language, at its same session, laid a privilege tax on vending machines.

Decisions cited by appellant describe exactly the machine we have here, and they condemn it. But the very clearness with which these authorities apply to our machine demonstrates that the legislature of Mississippi intended to make legal a machine which was unlawful in the states where these cases were decided. The cases just mentioned were each and every one decided prior to the passage of the Law of 1924. It must be presumed that our legislature had full knowledge of each and every one of these decisions when the law of 1924 was enacted. 25 R. C. L. 1053; Moffitt, 20 L. R. A. (N. S.) 209.

Our legislature enacted the Law of 1924 in order specifically and emphatically to establish in Mississippi a rule different from that which prevailed in those other states. We frankly concede for argument's sake that but for the Law of 1924, this court should and would hold our machine illegal, but in view of the fact that we have here a statute which was not in force in those other states, that those decisions do not apply, except to prove what our legislature had in mind when it framed and adopted the Law of 1924.

Mr. Johnson, in his brief indulges in an extended reasoning as to the rules of law to be applied in construing the proviso to the Law of 1924. We cannot, and will not attempt to follow him in all his discussion on this point. The language of this proviso is plain, clear, simple and unambiguous, and if that assertion is correct, then it is unnecessary to apply intricate rules of statutory construction, but the plain intent of the legislature must be enforced.

In *Falkner* v. *State*, 98 So. 693, this court, speaking through ETHRIDGE, J., used language which was very timely, in view of the tendency of many litigants to urge this court to indulge in judicial legislation. In that case this court was discussing its duty to uphold the constitution, regardless of popular clamor or criticism, and of course the same language would apply with equal force

to the construction of a statute, if that statute be clear and unmistakable in its language.

Argument has been made by the appellant to the effect that this machine is iniquitous, and as such should not be protected by a court of equity through its injunction, because the appellee does not come into court with clean hands. The maxim of equity just mentioned, however, is of course subject to other maxims of equity as clearly intrenched in the jurisprudence of this state. It is also perfectly clear that equity suffers no wrong to exist without its remedy, and above all, equity follows the law. Certain it is that if this machine is legal under express authority from our legislature, those who operate it and own it are entitled to its protection. Whether the appellee polluted his hands when he engaged in operating this machine was a question for the legislature to settle, and it was not a question for the chancellor. Abundant authorities to sustain this contention have been submitted by our associates. We desire only to call the court's attention to *Dulion* v. *Harkness,* 80 Miss. 8, 31 So. 416.

*Currie & Amis,* also for appellee.

Did the legislature of the state of Mississippi have the right to enact chapter 339, Laws of 1924? Assuming that this act legalized the operation of machines similar to the one here in controversy, to answer that question we must first ascertain what inhibitions there are on the legislature with reference to the passage of this or any other law. The rule, as we understand it, is that if there be no prohibition in the federal or state Constitution, then any law passed by the legislature would be legal and binding.

The legislature is the creator of the public policy of the state, members of the legislature being the representatives of the people, and the acts of the legislature being the expression of the people themselves, and as such

define the public policy of the state, irrespective of what any former legislature may have said or done, and any act so passed remains the public policy until repealed, either by implication or expressly through the act of some later legislature.

We admit that some courts have held in the construction of the provisions of their state constitution that the prohibition of a lottery included slot machines, but in those cases the constitutional provisions must not have been worded as was ours, and as to which we are unable to say, but if the constitutional provisions included by those courts were similar to ours, then we respectfully submit that those courts are in error in their holdings, and in their arrival at such a decision, they must have departed from the rule of construction generally accepted by all courts, and have followed a strict dictionary definition of the word lottery. *Ex Parte Pierotti,* 184 Pa. 209.

With due deference to the attorney-general and the cases cited, we submit that unless the attorney-general can show the court that the courts whose decisions are cited by him were passing upon the validity of this machine under a statute similar to ours, then such cases can be no authority in this suit.

Assuming, for the sake of argument, that this machine has been held by all the courts cited in the brief of the attorney-general to have been a gambling device, their decisions amount to nothing, if the machine comes within the provisions of chapter 339 of the Laws of 1924.

The attorney-general can receive little comfort from those cases, unless he can go further and show that this machine does not come under the provisions of the language of this act.

It is too well settled to need the citation of authority that gambling as such was not a crime at common law. The *status* of gambling has been statutory entirely, and that which is gambling in one state may not be gambling at all in another. The playing of poker is prohibited

under the laws of Mississippi, under the general gambling statute, yet playing poker is, as we are advised, legalized in Louisiana. In Kentucky, for instance, one of the states in which the supreme court has held a machine similar to this to be a gambling device, and one of the cases, by the way, cited by the attorney-general, horse racing is made lawful, and hundreds of thousands of dollars are won and lost by the people of Kentucky in the betting on horse races through the pari-mutuel machine, is operated under the sanction of the state of Kentucky, and from which the state realizes a very handsome income.

Until the legislature passes upon a proposition in which there is involved an element of chance, either by a general statute prohibiting all gambling, or by a specific statute prohibiting the thing specifically, then any game no matter what the element of chance, can be operated unless prohibited by the constitution. The question now we desire to consider and present to the court is, does chapter 339 of the Laws of 1924, cover this machine? In order to answer this question, it is necessary to consider the language of the act and the machine itself. It seems to us then that the machine as such clearly comes within this proviso of the statute.

How could this law be construed, except under the general rules for the construction of statutes? What the legislature may have done in former years is no guide for the construction of this statute, if the language of the statute itself is plain. We submit that there is no peculiar rule for construction of this statute. The rule of construction of statutes as announced in the text and as affirmed time and time again by this court is, that when the language of the statute is clear and unambiguous, that there is no need for construction, and that the courts are not permitted to search for its meaning beyond the statute itself. 25 R. C. L. 963, Cyc. 1115; *Koch et al* v. *Bridges,* 45 Miss. 255; *Howell* v. *Smith,* 74 Miss. 142; *State of Miss., ex rel. J. B. Graves, District Attorney* v.

139 Miss.—7.

*John J. Henry,* 87 Miss. 125; *Yerger* v. *The State,* 91 Miss. 802; *Hamner* v. *Lumber Company,* 100 Miss. 249; *Abbott* v. *The State,* 106 Miss. 340; *Hamner* v. *Lumber Company,* 417; *Abbott* v. *State,* 105 Miss. 340; *Powell* v. *Smith,* 74 Miss. 142.

The legality of this machine, we submit to the court, is to be tested under the laws of Mississippi, and is to be determined by this court, after consideration of the fact as to whether or not the machine is an automatic vending machine, and whether it indicates in advance to the purchaser what he shall receive on each operation of it.

The decisions of other courts with reference to this machine cannot be even of persuasive value to this court, unless it be shown that those courts had before them at the time the construction of a statute similar to our own.

Argued orally by *Harry M. Bryan,* assistant Attorney-General, and *Means Johnston,* for appellant, and *F. M. Witty* and *J. H. Currie,* for appellee.

HOLDEN, J., delivered the opinion of the court.

The appellee, Mint Sales Company, sued out an injunction against the appellant, Crippen, sheriff of Leflore county, to restrain him from interfering with the operation of certain vending machines, commonly known as slot machines, in Leflore county. The cause came on for hearing on bill, answer, motion to dissolve, and proof before the chancellor, and a decree was entered sustaining the bill and making the injunction perpetual, and the sheriff appeals.

The controversy presented for our decision is whether or not the vending machine involved in this case is such a device as is prohibited by chapter 339, Laws of 1924, or whether the machine comes within the exception specified in the act and is deemed lawful and legalized by the language in the latter part of the statute, it being contended by the appellant that the character of machine here involved does not come within the protection of the

statute, and the appellee contending that the exception in the statute specifically covers the operation of the machine.

In order to first understand the statute invoked, we shall here set out chapter 339, Laws of 1924, which is as follows:

"It shall be unlawful for any person or persons, firms, copartnership or corporations, to operate any cane rack, knife rack, artful dodger, punch board, roll down, merchandise wheel, or slot machine, or similar devices. Any person or persons found guilty of a violation of this section shall be deemed guilty of a misdemeanor and fined in any sum not exceeding five hundred dollars or imprisonment for not exceeding three months. Provided, however, that this act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine."

It will be observed the act makes it unlawful for any person to operate any "slot machine, or similar device." Then it provides further "that this act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine."

The appellant urges that the provisions last quoted was intended to cover "vending machines" such as cup machines, gum machines, or stamp machines, where the player would receive the value of his money on each operation of the machine, and would know in advance exactly what he would get each and every time he put his coin into the machine; that the act was not intended to protect a gambling device or a machine which afforded elements of chance as to the amount and value of the thing to be received on any single operation of the machine.

The appellee contends the machine is lawful because the player can see in advance what he will get on each operation of the machine, and is therefore not a gambling device; but that whether it be a gambling device or

not, the statute specifically authorizes the operation of the machine involved in this case.

There is an agreed statement of facts in the record as to what the machine is and how operated. We here quote the agreed statement of facts, which is as follows:

"It is hereby agreed between counsel for complainant and defendant that, by placing a nickle or a trade check in the slot and pulling the lever, it is possible for this mint machine to pay off as many as two, four, eight, twelve, sixteen, and twenty trade checks, and it will pay off, in addition to a package of mints from each operation of said mint machine either two trade checks, four trade checks, eight trade checks, twelve trade checks, sixteen trade checks, or twenty trade checks, all of said trade checks being good for five cents worth of merchandise in the store in which the machine is located and that the number of checks which the party playing the machine will receive on each play are indicated in the window in advance of each operation of the machine, and that on each operation a package of mints is indicated and will be paid whether operated by a trade check or a coin.

The agreed statements of fact, together with the other proof in the case, show, according to our view, that the vending machine in question is very much like the ordinary slot machine operated in this state some years ago, except that it is operated in a somewhat different manner from the old slot machine.

We shall attempt to state the exact method of operation of the machine, so the question presented may be better understood. The machine gives out on each operation a package of mints, of very small value, and the player may also receive as many as twenty trade checks, worth about one dollar in trade, or he may receive nothing except the mints on any single operation of the machine. Before the player places a nickle or trade check in the slot and pulls the lever, the machine indicates what the player will receive when he operates it. The indi-

cator will show what the player is to get on the first operation of the machine, but it does not inform him, in advance of the first play, what he will get on the second operation of the machine. The player has the right to play the machine as many times as he desires. He cannot tell what he is going to receive on the second operation until he has paid for and operated it the first time. He knew what he would get the first time, but he did not know then what he would get on the second play. The indicator may point to nothing on the first operation and point to twenty checks on the second operation; the player having the right to operate the machine as long as he wishes.

It is our conclusion that the vending machine here involved is a gambling device, "a slot machine or similar device." It is plain to us that the element of chance involved is in the second operation of the machine, which may give to the player a large return or a small one for his money.

But whether or not it is a gambling device is immaterial, in our judgment, because we think the legislative act by its language prohibits the kind of vending machine involved in this case, as it was not the legislative intent to legalize such a device, but the statute was meant to cover the ordinary vending machines where the player would know what he was to receive each and every .time before he put his money into the slot, such as the stamp and gum machines.

The provision of the statute that the act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive "on each operation" of the machine, does not apply to the kind of machine here in question, because it does not indicate in advance what the purchaser, in the whole purchase, is to receive "on each operation of the machine." It is true the player can see in advance what he will get on the first operation, but not on the second. Each play by the player at the machine may consist of many operations by pull-

ing the lever, but the player engages in the element of chance as to what the indicator will show on the second or next operation because he does not then know what it will indicate on the second pull when he pulls the lever the first time. Therefore, taking the play as a whole, the machine does not indicate in advance what the player will get on each and all operations of the machine, and it is not the kind of vending machine that the legislature intended to exempt in the statute.

We do not think the legislature intended to legalize the device here involved. We cannot see our way clear to hold that the legislature meant to pass an act, legalizing and granting a monopoly to this character of gambling device while prohibiting all others of a similar nature. The record in the case indicates, and for that matter this court knows, from common knowledge, that the character of gambling device here involved is an insidious evil. It attracts the youth, gets their money, and educates them in the gambling spirit.

In view of these conclusions we think it is unlawful to operate the machine, and the decree of the chancellor should be reversed, and the bill dismissed.

*Reversed and bill dismissed.*

ETHRIDGE, J. (dissenting).

I am impelled to dissent in this case, not because of the importance of the subject-matter in controversy, for the subject-matter is a very trivial affair in my view, a veritable "tempest in a teapot," a "much ado about nothing," a pee-wee lawsuit. However, the principle of the decision is more important and, as I see it, is a plain refusal to construe the law as written by its plain language, but in effect, though not in name, a reformation of the statute.

I want to say at the outset that what I say in this opinion is not intended as a reflection on the judges who disagree with me. I have lived too long in the polemical atmosphere of the law not to know that wise men differ

honestly—that what appears to one man to be a certainty, by another is regarded as its exact opposite.

The concluding provision of chapter 339, Laws of 1924: "Provided, however, that this act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine,"—means to except from the statute a machine which indicates what the purchaser is to receive in advance each time he places a coin in the aperture. It does not mean and could not mean that the machine must indicate in advance all of the operations of the machine, because no person knows how many times any operator might operate it. It would be as impossible for human intelligence to know this, not knowing how many times a player was going to play, as the habit of the Eastern despots in ancient times to dream a dream and forget, and demand of the soothsayer that he tell him the dream first and then what it meant. Nothing short of divine revelation could foretell those things.

As used in the statute the word "each" refers to the several operations and not to the aggregate operations. All that is required or could be required logically would be for the player to see before placing his coin in the aperture what he would get for his coin on that particular operation, and that is exactly what the machine here involved does. If the player will only get mints for his money, that is indicated. If he would get mints plus a trade check, that is indicated before he puts his money in. In no case is there the slightest element of chance in his getting anything other than what is indicated by the machine. He knows precisely what he is going to get before he places his money and there is not any possibility of his being deceived thereby. As to how such a machine could be construed to be a gambling appliance is beyond my comprehension. That it was the intention of the legislature to legalize machines of this class is clear, not only from chapter 339, Laws of 1924, itself, but also from chapter 120, Laws of 1924, which imposes

a privilege tax upon various kinds of vending machines including the kind here involved. Whether the legislature acted wisely or unwisely in passing this statute and in making the exception is no concern whatever of the courts. The legislature is intrusted with all the law-making power of the state—it is the exclusive custodian of that power. People have the right through their lawful representatives to make any law they desire so long as it is not prohibited by the state and federal Constitutions. It is the very essence of free government that the separation of the powers of government should be maintained. The court is limited in its powers to disregard statutes to the question as to whether or not they are constitutional. It has no kind of power to control the legislature in shaping the public policy of the state. It cannot review or set aside the law because it may be unwise, unjust, or oppressive, or for any other consideration of that nature. The court's inquiry is solely as to whether the statute is constitutional, and if constitutional it must be enforced. The legislature clearly had power to enact the law. At common law it is not an offense to gamble, even if this machine should be classed as a gambling machine, which it is not.

The legislature has power to prohibit gambling or to permit it, and if it does a foolish thing or an unwise thing, the remedy is not in the courts but at the ballot box. *Ex parte Pierotti,* 43 Nev. 243, 184 P. 209, and authorities cited therein; Decennial Digest, First and Second Series, title "Constitutional Law," 70 (3); 10 Cent. Dig. "Constitutional Law," section 131; *Koch* v. *Bridges,* 45 Miss. 247; *Powell* v. *Smith,* 74 Miss. 142, 20 So. 872; *State* v. *Henry,* 87 Miss. 125, 40 So. 152, 5 L. R. A. (N. S.) 340; *Yerger* v. *State,* 91 Miss. 802, 45 So. 849; *Hamner* v. *State,* 100 Miss. 349, 56 So. 466; *Abbott* v. *State,* 106 Miss. 340, 63 So. 667.

Courts of equity have jurisdiction to reform a contract, but have no jurisdiction to reform a statute, and as a rose would smell as sweet by any other name, so

the essence of the proceeding to reform is not changed by calling it construction or interpretation.

Independent of jurisdiction it would be a dangerous undertaking for the court, if it had the power to undertake the job of correcting legislative mistakes and follies, for there is much in the statutes of the past dozen years evidencing midget minded statesmen and much of folly. Still I am not disposed to be hard on the legislature. Taken as a whole it does good work and eliminates many unwise measures. There are men in the legislature who could fill any station in the government with credit, and the majority would class as "average and better." But there are usually some thirty-five per cent. to forty per cent. of the membership whose only excuse for being sent to the legislature is to keep them out of the race for constables and justices of the peace. These men have votes and have to be reckoned with by the wise ones in shaping the legislation of the session. If you antagonize their bills they strike back. They are strong on midget legislation and when they introduce a bill to place jay birds under peace bonds, or to muzzle seed ticks, or to prohibit vending machines in stores, the wise ones will vote with them for the sake of more important measures coming on. None of these pigmy statesmen go after large questions and undertake their solution, they attack small tasks. They are strong on moral questions or something that sounds well which they can take back home to their people for home consumption in future politics. They go around with a spiritual microscope searching for the germs of evils in trifles, while utterly ignoring the mountains of iniquity which stand out in plain view in the nearby landscape. Instead of making war on the beasts and birds of prey that menace society they hunt for earth worms. Conscious of their inability to deal with large matters they make a record from trifles garbed in high-sounding phrases.

The importance of recognizing the right of the people to have the laws made by the law-making department,

even though sometimes that department may act un-wisely, is too essential to the perpetuity of free institu-tions to permit the court, being in a separate department of the government with separate powers, to cross the proper limits for the purpose of undertaking to change the logical results expressed in legislation.

Those who hold judicial power and exercise the func-tion of judging men's rights under the law should per-form their duty unshrinkingly and unmindful of public opinion or popular clamor. However, when this public opinion is crystallized into law, the courts should recog-nize it and give effect to it, but so long as it is not crystallized into law it should have no influence in ad-ministering the law. It is the very essence of liberty and justice that rights be measured and enforced by certain standards and uniform rules. A judge must adhere to the law. He cannot rightfully make law or change law. The law should be a rule of conduct for all from the high-est to the lowest. It should not be perverted even to at-tain a good temporary purpose. It will always happen that some wrong will be found to exist under any gen-eral rule. The human race is not perfect. They cannot declare any general rule that may not sometimes shield wrong. As long as some men are wiser than others, and as long as selfishness and greed shape the affairs of men, particular cases will arise making a departure from fixed principles seemingly desirable. It will be found, how-ever, that adhering to the fixed principle is better, and that less injustice will result from that course in the long run. Mistakes in statutes can be corrected by the appropriate department of the government before very great mischief results, and the legislature should be looked to to make the change and not the courts.

ANDERSON, J. (dissenting).

I dissent from the majority opinion. In the first place, in my opinion, the vending machine in question is not a

gaming device. The games outlawed by our statutes are such as are determined by lot or mere luck, in which hazard entirely predominates. 27 C. J. 968.

The agreed facts in this case show beyond controversy, it seems to me, that the operation of this vending machine is not gaming within that definition. The result of each operation is not brought about by mere luck or hazard. Every time the person operating the machine pulls the lever he knows in advance what he is going to get. How it can be said that such an operation is one of entire hazard or luck I am unable to understand.

It may be conceded, however, that the machine is a gaming device, nevertheless under the proviso of chapter 339, Laws of 1924, its use and operation was expressly excepted from our gaming statutes. That proviso is in this language: "Provided, however, that this act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine."

How this machine could be better described I am unable to see. By this proviso to the statute the legislature simply put its finger on this identical machine and said, so far as the use and operation of this machine is concerned, it shall not constitute the crime of gaming. The majority opinion is squarely in the face of the proviso. It says that the legislature meant one thing, while the legislature itself in plain language said it meant the converse. The statute is not open to construction. It means what it says in plain words. The majority opinion says it means something else.