792 So.2d 321 (2001)
MISSISSIPPI GAMING COMMISSION, Appellant
v.
SIX ELECTRONIC VIDEO GAMBLING DEVICES and Gene Gullick, Appellees.
No. 2000-CA-00422-COA.
Court of Appeals of Mississippi.
May 29, 2001.
Certiorari Denied August 16, 2001.
*322 Office of the Attorney General by Joan Myers, for Appellant.
Regan S. Russell, New Albany, for Appellees.
Before SOUTHWICK, P.J., LEE and THOMAS, JJ.

*323 MODIFIED OPINION ON MOTION FOR REHEARING
SOUTHWICK, P.J., for the Court:
¶ 1. The motion for rehearing is denied and this opinion is substituted for the initial opinion of the Court. The Mississippi Gaming Commission seized a machine being operated at a truck stop in Union County, the Commission having found that it was an illegal slot machine. The Commission then petitioned to have the machine destroyed, but the circuit court ordered its return to the owner. We agree that the device was a slot machine. We therefore reverse and render.

FACTS
¶ 2. In January 1998, agents of the Gaming Commission and deputies from the Union County Sheriffs Office raided Gene's Truck Center and seized six machines that it claimed were illegal gambling devices. See Miss.Code Ann. § 97-33-7 (Rev.2000). The Gaming Commission later filed a petition to permit the destruction of the machines. Before an order on the petition was entered, the owner of the five machines that are not in issue on this appeal conceded that those were gambling devices. This left contested only one of the machines, the "Lucky Shamrock." Gene Gullick, owner of the machine and the truck stop, was allowed to intervene in this case. He argued that the Lucky Shamrock is not a gambling device but simply an emergency telephone card vending machine. To explain the dispute, we will detail the operation of this machine.
¶ 3. For one dollar, the Lucky Shamrock dispenses a two minute emergency long distance calling card, good only for one call no matter the time actually used. With each card, the purchaser also receives a game piece. This has a bar code on the back which is read by the machine as the card is being dispensed. The display on the machine then simulates a slot machine by spinning nine squares. After a few moments the display shows the same combination of squares as on the game piece. Again simulating a slot machine, the machine lights up and plays music if the patron is a winner. A cashier at the store verifies the winning card. This clerk then pays the prize money that can be in the amount of one dollar up to five hundred dollars.
¶ 4. The Commission filed a motion for summary judgment, to which Gullick responded with his own such motion. The trial court found that the Lucky Shamrock was not an illegal gambling device. The Commission appeals.

DISCUSSION

I. Statutory Prohibition of Possessing Gambling Devices
¶ 5. It is illegal in Mississippi to possess certain gambling devices in areas not authorized for casinos. The relevant statutory section first provides that a person may not possess a "slot machine." Following that outright prohibition, there are clarifications and provisos. Also prohibited is any "slot machine [other than an antique as defined elsewhere] which delivers, or is so constructed as that by operation thereof it will deliver to the operator thereof anything of value in varying quantities, in addition to the merchandise received, and any slot machine ... that is constructed in such manner as that slugs, tokens, coins or similar devices are, or may be, used and delivered to the operator thereof in addition to merchandise of any sort contained in such machine, is hereby declared to be a gambling device...." Miss Code Ann. § 97-33-7(1) (Rev.2000). When reading the complete prohibition of slot machines with this proviso, we conclude that a slot machine that delivers no *324 guaranteed product at all is illegal, and so is one that always delivers specific merchandise and also something else of value in varying quantities. It is the possible prize that makes use of the machine of great interest to a class of customers as well as to the Commission.
¶ 6. A prohibited machine would include those that (1) are operated by coin, token or other consideration, and (2) dispense a product with (3) the possibility of dispensing additional items at varying quantities. The Lucky Shamrock is a machine operated by the insertion of coins. With each operation, a phone card is dispensed. Also dispensed is a game card that may award a prize in varying values. Under this section the Lucky Shamrock is a slot machine. There is another statute that we consider later that gives a similar but not identical definition of a "slot machine." That other statute was part of the extensive statutory regime entitled the "Mississippi Gaming Control Act," adopted in 1990. See Miss.Code Ann. § 75-76-1 (Rev.2000). That Act permits gambling in limited locations. Section 97-33-7, on the other hand, is the present version of the long-existing, and obviously contrarily motivated, criminal sanction against possessing slot machines in the state.
¶ 7. A simpler version of the criminal statute existed at the time of a precedent that we find useful in our analysis. The statute was this:
It shall be unlawful for any person or persons, firms, copartnership or corporations, to operate any cane rack, knife rack, artful dodger, punch board, roll down, merchandise wheel, or slot machine, or similar devices. Any person or persons found guilty of a violation of this section shall be deemed guilty of a misdemeanor and fined in any sum not exceeding $500 or imprisonment for not exceeding three months. Provided, however, that this act shall not apply to automatic vending machines which indicate in advance what the purchaser is to receive on each operation of the machine.
1924 Miss. Laws, chapter 339. Without the many embellishments in the present statute, this prohibited a "slot machine" but not a vending machine that indicated in advance what the user was to receive. The Supreme Court found that a machine that dispensed mint candy with each play along with an occasional bonus of from two to twenty trade checks was illegal. Crippen v. Mint Sales Co., 139 Miss. 87, 103 So. 503 (1925). The Court held "taking the play as a whole, the machine does not indicate in advance what the player will get on each and all operations of the machine, and it is not the kind of vending machine that the Legislature intended to exempt in the state." Id. at 504.
¶ 8. A statutory change was made after Crippen to clarify that providing something of value with every use could still leave the machine as an illegal gambling device. Vending machines were permitted if they delivered "exactly the same quantity of merchandise on each operation...." However, if they delivered "anything of value in varying quantities, in addition to the merchandise received," they were slot machines. 1938 Miss. Laws, ch. 353. The prior statutory prohibition on slot machines had been brief, but the Crippen court still found that the guaranteed receipt of something of value with every use did not make the machine acceptable since there was also a gamble on a varying quantity of other merchandise that could be received. The 1938 change made that rule statutorily explicit.
¶ 9. That exactly describes the operation of the machine at issue in this case. The present statute adds more explanations, but we find nothing in the current version *325 to exempt this kind of machine. If this was the entirety of the relevant law, we find that the Commission should have been granted judgment. We now turn to whether newer statutes adopted as part of the State's entering the world of casino gambling have altered these rules.

II. Definition of Slot Machine under § 75-76-5(ff)
¶ 10. This definition of a slot machine is found in the Gaming Control Act:
"Slot machine" means any mechanical, electrical or other device, contrivance or machine which, upon insertion of a coin, token or similar object, or upon payment of any consideration, is available to play or operate, the play or operation of which, whether by reason of the skill of the operator or application of the element of chance, or both, may deliver or entitle the person playing or operating the machine to receive cash, premiums, merchandise, tokens or anything of value, whether the payoff is made automatically from the machine or in any other manner. The term does not include any antique coin machine as defined in Section 27-27-12.
Miss.Code Ann. § 75-76-5(ff) (Rev.2000). We first note that the definition may only apply to the use of the phrase "slot machine" in the Gaming Control Act. Miss. Code Ann. § 75-76-5 ("As used in this chapter, unless the context requires otherwise," the various words have the stated definitions.) An argument could be made, though, that when the definition statute refers to "as used in this chapter," it is not referring to chapter 76 of Title 75, which contains the gaming statutes. The other possible chapter is the one that joined all the new gaming statutes and amendments to old ones into chapter 45 of the laws passed at a special session of the legislature. 1990 Miss. Laws, Ex.Sess., ch. 45, § 3 (definitions) & § 149 (amendment of § 97-33-7). In fact, the legislation made the definitions apply to the words "as used in this act," not "chapter," which would be everything in that one enactment. 1990 Miss. Laws, Ex.Sess., ch. 45, § 3.
¶ 11. In addition, we find overlapping authority used by the Gaming Commission when it filed the present action seeking destruction of the "Lucky Shamrock." The petition for destruction stated that this and the other machines were unlawful under the criminal statute, section 97-33-7, but also under the Gaming Control Act, referred to as Mississippi Code Sections "75-76-1, et seq." The Commission has authority to utilize both statutes.
¶ 12. Under the Gaming Control Act, the Executive Director of the Commission may hire individuals with law enforcement backgrounds for the Enforcement Division and the Investigative Division. Miss.Code Ann. § 75-76-17(1) & (2) (Rev.2000). Through the Act, the executive director and his agents have the authority to inspect and seize equipment from "premises wherein gaming is conducted." Miss. Code. Ann. § 75-76-27(2)(a) & (b) (Rev. 2000). Pursuant to this same section, the director has the authority to investigate gaming activities. Miss.Code Ann. § 75-76-27(4).
¶ 13. Under the separate criminal statute, it is the "duty of all law-enforcing officers to seize and immediately destroy all such [gambling] machines and devices...." Miss.Code Ann. § 97-33-7(2) (Rev.2000). The executive director and the Commission's law enforcement employees have the powers of peace officers for purposes of enforcing the Act. Id.
¶ 14. For present purposes, then, we will assume the Gaming Control Act definition of a "slot machine" is applicable to the criminal statute. Only if that definition overrides established interpretations of the *326 criminal statute would we need to make a holding regarding its applicability. First, the device must be a machine. Secondly, the machine must operate by the insertion of coins, tokens or similar items. Third, the machine must operate by the skill of the operator or through chance. The fourth element requires the machine to "deliver or entitle" the player cash, prize or other valuable items. Miss.Code Ann. § 75-76-5(ff). Initially, it is difficult to see the Lucky Shamrock's escaping coverage.
¶ 15. The principal argument to avoid coverage that has not yet been considered is this: it must be some operation of the machine itself that determines the winner. The Lucky Shamrock requires that some technician place a roll of calling cards in the machine. The order of the cards on the roll determines the order of winners, not any later variables as the machine is played, i.e., nothing that occurs with the machine at each insertion of money alters whether the next phone card will also have a bonus prize. Only the order of winners and losers on the roll determines that. Yet we find no significance to such a point. The player is unaware of the order on the roll. What the machine "knows" does not affect the player's gamble. The roll has the winning combination piece attached to the calling card in random order. By statute the machine only needs to "deliver or entitle" the player to a prize, which is present with the Lucky Shamrock machine.
¶ 16. Not yet having found a reason to exempt this machine, we address the relevance of a precedent that held the calling card itself, undispensed by a machine, did not constitute a lottery.

III. Applicability of Supreme Court's Treasured Arts analysis

¶ 17. Gullick relies on a recent Supreme Court precedent that allegedly resolves the issues in his favor, all these foregoing statutes and cases notwithstanding. The Court did not address slot machine issues, though, as no machine was involved. Instead, the suit concerned whether a telephone card such as the one at issue here violated the lottery statutes. Mississippi Gaming Commission v. Treasured Arts, Inc., 699 So.2d 936 (Miss.1997).
¶ 18. In Treasured Arts, a business that desired to sell telephone calling cards that also gave the potential for a varying prize sought a declaratory judgment upholding the card's legality. For two dollars, a purchaser would receive up to three minutes of long distance telephone time. On one side of the telephone calling card was a "scratch-and-win" game piece and on the other were instructions on the phone card use. The purchaser could win prizes ranging from $1 to $50,000 from the "scratch-and-win" game. Id. at 937.
¶ 19. Obviously no slot machine issues arose. None of the other devices made illegal by Section 97-33-7 (e.g., "cane rack, knife rack, artful dodger," whatever they are) were involved either. Instead, the issue was one of lotteries. A section of the constitution formerly barred lotteries in Mississippi. It was repealed in 1992. See Miss. Const. Art. 4, § 98, editor's note (Rev.1998); 1992 Miss. Laws, ch. 713. Before the repeal, the legislature in 1990 as part of the Gaming Control Act acknowledged the prohibition of what was then Section 98 of the Constitution and undertook defining a prohibited lottery. Miss. Code Ann. § 75-76-3(6) (Rev.2000). Explicitly in order to assist in the enforcement of Section 98, the legislature found "that a lottery, as prohibited by the Constitution, does not include all forms of gambling" but does include certain kinds of wagers that it then described. Id. This statute is still in effect.
*327 ¶ 20. The repeal of Section 98 did not make lotteries legal, as criminal statutes continue to make them illegal. The initial section of a multiple-section chapter on gambling offenses bars a variety of gambling activities, but then decriminalizes some of those activities on cruise vessels located along the Mississippi River and the Gulf Coast. Miss.Code Ann. § 97-33-1 (Rev.2000). Several later sections specifically prohibit lotteries. Miss.Code Ann. § 97-33-31 through 97-33-47 (Rev.2000). Thus the precise issue was whether the calling card was violative of the common law or statutory prohibition on lotteries. Treasured Arts, 699 So.2d at 938. Somewhat like our concern regarding the Mississippi Gaming Act's definition of "slot machines," the definition of "lottery" in Section 75-76-3(6) by its explicit terms only applies to the no-longer existing section 98 of the state constitution. Despite the specific limited applicability of the definition, we will employ it as the best evidence of a definition for all purposes.
¶ 21. To decide whether the calling card constituted a lottery, the Court quoted the definition in section 75-76-3(6). Treasured Arts, 699 So.2d at 938-39. The statutory definition contains four sections, but the element on which the Treasured Arts decision turned was that value must be paid for a chance to win. The Court determined that the calling card was not a lottery because there was no proof that the amount paid for the telephone card was more than the retail price of the telephone time. Id at 939. This meant that the State failed to prove that extra value had been paid for the chance to win a prize. Absent value paid for the gamble, this was not a lottery. Id. at 940-41.
¶ 22. We are not concerned in the present appeal with whether the card itself is a lottery but whether the dispensing device is a slot machine. The Lucky Shamrock was operated by insertion of coin. By chance unknown in advance to the user, the machine would occasionally deliver something "of value in varying quantities.... in addition to merchandise...." Miss Code Ann. § 97-33-7(1) (2000). That is by definition a slot machine.
¶ 23. We do not ignore the obvious. Our conclusion means that the machine itself is the problem, not the merchandise that is being dispensed. Had the cards been sold over the counter at the same truck stop, absent better evidence than was introduced by the State in Treasured Arts, the card might not constitute a lottery. We find nothing irrational or improper about the different results. Slot machines have long been prohibited independently of the ban on lotteries. The slot machine "experience" has been legislatively identified as deserving of criminal sanction, so have lotteries and an array of other forms of gambling. Not all awards of prizes are lotteries. However, machines that dispense prizes varying from zero to five hundred dollars upon the insertion of a coin, the existence and value of the prizes dependent upon chance, are slot machines.
¶ 24. Gullick's insistence on the relevance of Treasured Arts centers on the argument that no wager has occurred with the Lucky Shamrock because it is possible to pay as much for the phone time alone as the machine requires for the card and the potential for a prize. Treasured Arts is irrelevant, though, because reasoning based on whether the risk to win is a lottery avoids the entirely different issue of whether the means to win is by a slot machine.
¶ 25. On rehearing, the owner for the first time on appeal argues that the phone cards themselves should be returned even if the machine is considered to be illegal. This issue arises from our discussion *328 of Treasured Arts. In effect, we are being asked whether these statutes require or at least permit a device to be dismantled and various parts labeled as contraband while others maintain their innocence. There is neither statutory language nor practicality in permitting this approach. The statute states that no one has a property right in a prohibited gambling device. Miss.Code Ann. § 97-33-7(2) (Rev.2000). The device is a slot machine because it delivers something "of value in varying quantities ... in addition to merchandise," Miss.Code Ann. § 97-33-7(1) (Rev.2000). This makes the phone cards an integral and not just incidental factor in deciding that this is a slot machine. We thus find that the phone cards do not have to be returned.

IV. Legitimate vending machines with promotions
¶ 26. In an effort to show a "parade of horribles," Gullick argues that if this vending machine is declared an illegal gambling device, then so would be a large number of vending machines that dispense products along with promotional sweepstakes. Those include bottle cap games or prizes that are marked inside soft drink cans. The Commission sees a different parade if we affirm, one in which machines that look and sound and act like slot machines must be permitted statewide if they also dispense some trinket that could have an inflated retail value as high as the price to play.
¶ 27. We acknowledge that a line has implicitly been drawn in the Commission's enforcement activities between what it considers to be legal vending machines that sell products with promotional sweepstakes and illegal devices such as the Lucky Shamrock. Among the distinctions mentioned in the Commission's brief is that soft drink and other product promotions usually are limited in time and have dubious enough odds of winning significant prizes that winning is only an incidental reason for purchasing the merchandise. For example, the Commission argues that large numbers of unused calling cards were thrown away in a trash can adjacent to the Lucky Shamrock once the purchaser discovered that no prize was won. Similarly large numbers of cans of colas sold by vending machines likely are not opened solely to determine if a prize has been won, then discarded with the contents unconsumed. Additionally, the Lucky Shamrock machine does not give change. If a person places a five dollar bill in the machine in order to get one two-minute calling card, no change will be returned. The person must walk away or continue to press the start button until all of the money is used and he has received a card and game piece for each dollar placed in the machine.
¶ 28. These are relevant considerations in determining whether a device is a slot machine intended to encourage gambling or instead is a product dispenser with a sales promotion. The Commission points out that it has been empowered to interpret and enforce the statute. Deference to the interpretations of an agency with responsibility for implementing a statute is appropriate, but such deference should be to interpretive decisions reached at the appropriate level. This record does not allow us to determine how within the Commission such expertise has been brought to bear on the sales promotion versus gambling distinctions that we are discussing. The United States Supreme Court has rejected the principle that deference should be shown to post hoc agency litigating positions that are unsupported by regulations or administrative practice. Bowen v. Georgetown University Hosp., 488 U.S. 204, 212, 109 S.Ct. 468, 102 *329 L.Ed.2d 493 (1988). Deference is at its healthiest when it is firmly rooted in a "formal issuance from the agency, such as a regulation, guideline, policy statement, or administrative adjudication," and not just in a litigating position in a lawsuit. Gregory v. Ashcroft, 501 U.S. 452, 474, 485 n. 3, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (White, J., concurring and dissenting).
¶ 29. We do not suggest that only formal rule-making is sufficient but are noting that an agency can act based on decisions reached at any one of a number of internal levels. We have no difficulty in determining that the Lucky Shamrock machine violates the plain language of the criminal statute barring slot machines. Closer questions on which deference to the agency might be outcome-determinative could use a clearer record to reveal the consistency and authority of the interpretation to which a court is being asked to give deference.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY IS REVERSED AND JUDGMENT IS HERE RENDERED IN FAVOR OF THE MISSISSIPPI GAMING COMMISSION. COSTS ARE TAXED TO THE APPELLEES.
McMILLIN, C.J., PAYNE, BRIDGES, THOMAS, LEE, IRVING, and MYERS, JJ., concur.
KING, P.J., and CHANDLER, J., not participating.