## A. M. WORTHAM *v.* THE STATE.

1. **GAME OF CHANCE.** *Billiards.*
    A liquor seller cannot be convicted, under Code 1880, § 1121, of permitting a "game of chance" upon his premises, on proof that he allowed billiard playing.

2. **SAME.** *Skill.*
    Under an indictment for permitting on his premises a certain game of chance, *to wit:* billiard playing, he may introduce evidence to show that this is a game, not of chance, but of skill.

3. **SAME.** *Definition.*
    The statute refers to games wherein some advantage is gained by acts which are required because their results are determined by chance.

APPEAL from the Circuit Court of Monroe County.
Hon. J. A. GREEN, Judge.
*Murphy, Sykes & Bristow*, for the appellant.

Whether "billiards" is a game of chance is a question, not of law, but of fact to be decided by the jury. Courts take judicial notice of what *ought* to be known within the limits of their jurisdiction. 1 Greenl. Evid. § 6. Differences in the nature of games are not of that character. The Court of Appeals in

Kentucky has said that it does not judicially know what kind of a game " chuck-a-luck " is, and that this name does not *per se* identify any game of chance, not even chuck-a-luck. *Montee* v. *Commonwealth*, 3 J. J. Marsh. 132. If this be correct, the court erred in refusing to admit the defendant's evidence, and in sustaining the verdict on the proof made by the State. If, however, the question is one of law, we must, in the absence of adjudications, take the best standard authorities. In Webster's Dictionary, Chambers's Encyclopædia, and Appleton's New American Cyclopædia, this game is styled a game of skill. A player at billiards may make a brilliant stroke by accident, but a tyro in chess may also accidentally checkmate a master of the game, or a cart horse distance a racer. It would, however, be illogical to say that chess and horse-racing are therefore games of chance. In dealing cards and in dice-throwing, roulette, rouge-et-noir, faro, and other like games, the element of chance is at the foundation. This distinction has been judicially sustained. *Harless* v. *United States*, Morris (Iowa), 169; *State* v. *Gupton*, 8 Ired. 271. The statute is plain, and leaves no room for construction. In order to make it include all games, for the purpose of furthering the assumed legislative intent to prevent the evil of combining play and drinking, the court will have to disregard the language of the law. That would be not to construe, but to destroy. *Troup* v. *Rice*, 55 Miss. 278.

*E. H. Bristow*, on the same side, made an oral argument.

*T. C. Catchings*, Attorney General, for the State, argued orally, and filed a brief, citing *State* v. *Gupton*, 8 Ired. 271; *Sigel* v. *Jebb*, 3 Starkie, 1; 3 Chit. Cr. Law, 673.

COOPER, J., delivered the opinion of the court.

Code 1880, § 1121, provides that, " if any person who sells vinous or spirituous liquors shall permit card playing, dice throwing, or other game of chance on his premises, or in any adjoining apartment subject to his control, he shall, on conviction, be subject to a fine of five hundred dollars and imprisonment for not more than six months, or to either such fine or imprisonment." The appellant, who is a vendor of vinous and spirituous liquors, was indicted for permitting

on his premises a certain game of chance, *to wit*, billiard play-ing, and from a conviction on this indictment he prosecutes this appeal.  On the trial no evidence was introduced by the State, except that the defendant was a dealer in spirituous liquors, and permitted a game of billiards to be played in the building occupied and used by him in the prosecution of his business.  The defendant on his part offered evidence for the purpose of proving that the game of billiards is not a game of chance, but one of skill, to the introduction of which evidence the State objected, and the objection was sustained and the evidence excluded.  It is apparent that the learned judge below construed the statute as prohibiting the seller of vinous and spirituous liquors from permitting on his premises the playing of any game, or, that the game of billiards is included in the words, " other game of chance."

The evil intended to be remedied by the statute was that arising from a combination of dram-drinking and sport in places of public resort, and it may be that the intention of the legislature was to prohibit the playing of any games of any character at places where liquors are sold; but this inten-tion must be discovered by the courts from the words used in the law, and it is only where from the language used a doubt arises that they are at liberty to resort to construction.  When as in this case the words of the statute are unequivocal, and convey to the mind a distinct and single meaning, it is not in the power of the courts to substitute other or different words, or to put upon the statute a construction which necessitates the elimination of some word from it, and thus substitute for what the legislature has said what they think it may have desired to say, or what it ought to have said to give full relief against the evil it intended to remedy.  We are bound by the law as written, and by the terms of the statute under con-sideration the playing only of such games as are games of chance is prohibited on the premises where liquors are sold.  It may be true that in the playing of all games there is, to a greater or less degree, an element of chance, in the sense that an unexpected result follows the peculiarly skilful or negligent act of the player, but this is not the chance which brings the game within the condemnation of

the statute, for in such cases the chance, or, more properly, the accident, occurs occasionally, and is not inherent in the game. The games included in this statute, we think, are those only in which the game itself is decided, or some advantage therein is lost or gained, by the player or some third person doing an act which is required by some rule of the game to be done, the result of which is determined by chance and not by the skill of the actor, and which is required to be done because of the accidental character of its consequences, to the end that chance may enter as an element in the game. It is the character of the game, and not the skill or want of skill of the player, which brings it into or excludes it from the prohibition of the statute. Such we understand to be the conclusion of the Supreme Court of North Carolina, in the case of *State* v. *Gupton*, 8 Ired. 271, cited by the Attorney General, which is the only direct adjudication we have been able to find upon the question. The evidence on the part of the State was insufficient to authorize the verdict, and the court erred in excluding the testimony offered by the defendant.

*Reversed and remanded.*