# Almy Manufacturing Company, Appellee, v. City of Chicago, Appellant.

## Gen. No. 22,663.

1. GAMING—*when slot machine constitutes a gambling device.* A slot machine which is operated by the insertion of a nickel in the slot for which the customer receives merchandise valued at from five to twenty-five cents, and which indicates the amount of the check next to be received, and will produce checks of certain denominations in regular rotation if the mechanism of the machine is not interfered with, all of which can be determined by reference to a printed card hanging on the front of the machine and to certain discs on the back of the machine which are invisible from the front, but is susceptible of arrangement by a mechanism in a few seconds so that the checks will appear in irregular manner, is a gambling device, as it is immaterial that by reference to the chart and the discs, with the mechanism in an altered condition, there would be no element of chance.

2. LOTTERIES, § 1*—*what is a lottery.* A lottery is a scheme for the distribution of prizes by lot or chance; a hazard in which sums

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Almy Mfg. Co. v. City of Chicago, 202 Ill. App. 240.

are ventured for the chance of obtaining greater value.

3. GAMING—*what constitutes gambling.* The hazard on small amounts to win larger amounts is gambling.

Interlocutory appeal from the Superior Court of Cook county; the Hon. WILLIAM FENIMORE COOPER, Judge, presiding. Heard in this court. Reversed. Opinion filed December 18, 1916. Rehearing denied December 29, 1916. *Certiorari* denied by Supreme Court (making opinion final).

SAMUEL A. ETTELSON, F. D. AYERS and C. E. CLEVE-LAND, for appellant.

BRADY, RUTLEDGE & DEVANEY, for appellee.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Complainant company manufactures and vends slot machines of the nature and with the character-istics of the machine in evidence in this litigation, which machine was manufactured by it. This machine was seized and carried away by the police of Chicago from the saloon of one Thomas Madden, who was ar-rested to answer a charge of violating section 984 of the Revised Ordinances of the City of Chicago on the theory that the slot machine seized was an implement of gambling. Under section 137g, ch. 38, Rev. St. (J. & A ¶ 3747), being "An Act to prohibit the use of clock, tape, slot or other machines or devices for gambling purposes," the machine, if a gambling device, might be destroyed by the municipal authorities. The ma-chine is labeled "Automatic Cashier and Discount Machine." The bill in this case asks that the municipal authorities be enjoined from seizing, interfering with or preventing the use and operation of any of such machines, either manufactured, sold or leased by com-plainant, and from arresting or causing to be arrested any person who shall keep, own, operate or use in any room, saloon, building, etc., any of such machines. A reference to a master was made to determine whether

the machines were gambling devices or legitimate mechanical devices. On this reference the master heard evidence and examined and operated the machine in evidence. The master reported that the machines were legal and legitimate and not gambling devices. After overruling exceptions of the city to the report, the interlocutory injunctional order appealed from restraining the city and its officers as prayed was entered.

The machine and the manner in which it is susceptible of being worked is about as follows: At the top of the machine there are places where it says, "Five cents buys five cents worth of mdse."—"Five cents buys ten cents worth mdse."—"Five cents buys fifteen cents worth mdse."— "Five cents buys twenty-five cents mdse." Moving pictures of a more or less lascivious character, which are operated with a spring, repeat first from the left to the right and contrariwise. Just below the pictures is a glass which shows a music disc, and when the machine responds to the insertion of a nickel it gives forth music. When the machine is in running order and fed with nickels one light appears behind one of the four glasses, designating the amount in merchandise of the check paid. The merchandise check which brings about the changes in amounts consists of four tubes that hold the different checks, each holding five, ten, fifteen and twenty-five cent checks respectively. At the lower end of each tube is a little finger. Where these fingers come up they knock out certain checks at the bottom of the tubes under which they are. These fingers are connected and revolve on a drum on the inside about four inches in diameter and one and a half inches thick. This drum is perfectly smooth except for the openings in the surface where the fingers drop. The finger representing the five cent check remains on a depression in the drum except when the finger representing a ten, fifteen or twenty-five cent check drops in, when the

finger representing the five cent check is held up. The finger that ejects the merchandise check also operates the mechanism so that the light representing the amount of the check that is next to be ejected is lighted up. The drum wheel is moved by a ratchet on the lever that works in notches that are in the drum, fifty-four in number. The ratchet arrangement which shifts the drum forward causes it to move from one notch to various numbers from one to five. The machine could be so arranged that it would play each notch individually and successively without jumping any notches. There are two discs that connect with this drum wheel; the large disc is connected in such a way that it revolves with the inside drum to control the fingers. There is also a small disc that is connected with a mechanical arrangement that tells how many teeth the ratchet will shove the drum around by the operation of the handle. The large disc is about ten inches in size and is of a brass color with black letters on it. The smaller disc is about three and a half inches, brass color, with black letters and figures. Neither the large nor the small disc can be observed from the front of the machine. Two cards or charts hang on the front of the machine, and may be detached or turned with their backs to the front without any effort. The white card hanging in front of the machine gives the directions for its use. The same amount of money is played in the machine at all times. The machine never pays a check for less than five cents to be traded, nor more than twenty-five cents. By means of the card and the discs, many plays in advance could be figured out. By the aid of the lights alone, the card being removed or hidden from view, one play in advance could be determined. It would not be much of a mechanical task to change the machine so that it would operate differently than when operated by the card, and it would take a mechanician about twenty seconds to make this change providing the machine

was open, and the door of the machine could be readily opened with a key. It is a simple operation to make the machine pay differently than the directions indi-cate, and the machine could be easily set back to its original order without any injury to the same. It is virtually conceded that the machine without the card hung upon the brass hook is a gambling device. While the card indicates when a winning is to be made, without it all is chance.

The "card" is evidently intended to take the "curse" off the machine as a gambling device, but we think it utterly fails to do so. Players may be deluded into so believing, but this court cannot be. The card is movable and transitory in its nature and is not an integral part of the machine in any sense.

The purpose of the machine, its quality and character, the possibilities of its operation and the manner in which it is susceptible of use are controlling factors in determining whether it is a gambling device in fact or not. We think the machine must be judged as to its being a gambling device or not without reference to the "card," because the "card" may or may not be in sight, according to the whim, wish or desire of the operator. While it is true that the player will receive five cents in trade for the nickel which he places in the slot of the machine, yet that is not what induces the player to make the venture. It is the lure and the chance to get maybe ten, fifteen or twenty-five cents as a return for the five cent investment. It is the lure of the game that makes it gambling. This is the attraction that incites the cupidity of the player.

Again, the machine is not an "automatic cashier and discount machine." To so characterize it is simply another attempt to disguise its real character. The case with which the mechanism can be manipulated so that it may be diverted from its apparent innocent character to that of a gambling device brings

the machine within the statute and the ordinance as a gambling device. The machine gives forth nothing but a check. The check takes the place of the nickel deposited in it, therefore it does not perform the function of a cashier, because the check takes the place of the nickel and must be handed to the person who returns to the player the value of the check.

Upon what theory the machine performs the function of a "discount machine" we are unable to discern either from the machine itself or anything we find in the record. The machine is an exhibit in the case and is before us. We have examined it, operated it and tested its various capacities for good or evil, and from the record and the machine, and its manner and method of working, we are of the opinion that it is a gambling device and under the ban of the law. The machine is evidently masquerading under a false title, and is, we think, akin to a lottery in its operation, coming within the definition of the lexicographers of a lottery, which is, "a scheme for the distribution of prizes by lot or chance"; "a hazard in which sums are ventured for the chance of obtaining a greater value." The hazard of small amounts to win larger is gambling. The hazard of putting five cents in the slot of this machine with a chance of winning ten, fifteen or twenty-five cents stamps it as a gambling device and, as the evidence shows, the machine can be so manipulated that the winning of more than the amount invested is chance in which neither the will nor the skill of the operator can influence the result, which further characterizes it as a gambling device.

A case similar to the facts and the same in principle is *Lang v. Merwin,* 99 Me. 486. This was a slot machine case, in its essence akin to the one at bar. There, as here, the playing was a nickel, the return for the nickel being a nickel cigar with a chance of winning more cigars to the amount of fifty, and the court said:

"In the case before us it is idle to assume, or concede, that the person putting his five cents into the machine may be doing so merely as a means or mode of buying a five cent cigar. It is idle to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance it would not be used. True, the cigar dealer sets up the machine to increase his trade and is recouped by that increase for any losses, so that in the end he loses nothing, but he does so by arousing and stimulating the gambling propensity, the very propensity the legislature evidently seeks to repress. The element of chance is the soul of the transaction. The operator hopes by chance to get something for nothing. The dealer hopes chance will save him from giving something for nothing. Each is pecuniarily interested adverse to the other in a result to be determined solely by chance. To use the language of the street, 'it is a gamble' which will win, and we have no doubt the transaction is 'gambling' in the statutory sense of the word."

We think the logic and the reasoning in the case *supra* are pertinently applicable to the facts of the instant case. Lot and chance are the elements of this device, which stamp it as gambling.

In *Horner v. United States,* 147 U. S. 449, the scheme of the Austrian government to float some bonds was declared to be a lottery, and the court said:

"Although the transaction in question was an attempt by Austria to obtain a loan of money to be put into her treasury, it is quite evident that she undertook to assist her credit by an appeal to the cupidity of those who had money. * * * Every holder of a bond has an equal chance with the holder of every other bond of drawing one of such prizes. Whoever purchases one of the bonds, purchases a chance in a lottery, or, within the language of the statute, an 'enterprise offering prizes dependent upon lot or chance.' The element of certainty goes hand in hand with the element of lot or chance, and the former does not destroy the existence or effect of the latter."

We therefore hold that the slot machines of complainant of the character of the one in evidence are gambling devices and are subject to be dealt with, together with the persons owning or c ating the same, as directed by the ordinance of the city of Chicago and the statutes of the State, *supra,* regulating such machines.

The interlocutory injunctional order appealed from was improvidently granted and is therefore reversed.

*Reversed.*