Question Game Company, Inc., Appellee, v. E. F. Ploner, Trading as Peerless Sales Company, Appellant.

## Gen. No. 36,716.

Opinion filed December 29, 1933.

HARRY GRALNEK, for appellant.

PINES, MORSE & STEIN, for appellee; CLARENCE T. MORSE, of counsel.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

By this appeal defendant, E. F. Ploner, doing business as Peerless Sales Co., seeks to reverse a judgment for $176.55 entered against him in favor of plaintiff in a 4th class contract action in the municipal court which was tried by the court without a jury.

Plaintiff's statement of claim alleged that July 10, 1932, it sold and delivered to defendant 200 square hole boards at an agreed price of $176.55, which included a 10 per cent United States game tax, and that defendant failed and refused to pay for the merchandise or any part of it. Defendant was not required to and did not file an affidavit of merits.

Defendant contends that the articles sold were gambling devices and that plaintiff is precluded by law from maintaining an action for the recovery of the price of the merchandise.

Plaintiff's theory is that the articles sold were lawful merchandise and that defendant is liable for the agreed price; that the game played through the medium of the board is highly educational and instructive as well as a source of innocent pleasure to the players; that it may be played with or without the award of a prize; that any prize awarded is incidental and is simply in recognition of the superior general knowledge of the player and adds a certain amount of zest and interest to social gatherings and entertainments where the game is played; that information and general knowledge which determine the result are the dominant elements in the playing of the game; that it certainly would not attract players because of the

gambling spirit; that the presumption is in favor of the lawful character of the article; and that there is no evidence in the record that plaintiff had any knowledge that defendant intended to use the boards for any unlawful purpose.

The salient facts, as they appear from the stipulation of the parties upon which the case was tried, are that July 10, 1932, defendant called the office of plaintiff and ordered 200 square hole boards delivered to him, for which he agreed to pay $176.55; that on the same day plaintiff delivered the merchandise to defendant at his place of business; that November 10, 1932, defendant sent the following letter to plaintiff:

"In the matter of your invoice dated July 10, 1932, for the amount of $176.55, beg to advise that we are not liable for this amount as we have been advised that there is no legal liability on our part due to the fact that the goods covered by this invoice are for gambling purposes and we therefore refuse to pay.

"Peerless Sales Company,
"E. F. Ploner";

that the punch boards sold to defendant contained slips of paper disposed in cells on the board containing, in addition to the number on same, certain questions relating to geography, history, popular science, current events, advertising, slogans, sports, the Bible, literature and a wide range of other subjects that were educational as well as entertaining and interesting for parties or other social gatherings; that the questions to be answered relating to the above mentioned subjects are selected from the board by chance; that the board has a highly educational value, while at the same time it includes the element of chance whereby it may be particularly useful for the distribution of prizes either at parties or social gatherings, or in the advertising or vending of merchandise; that a key or answer card accompanies each board on which appears

answers to the questions on the slips; that after the slips have been withdrawn and answered prizes may be given, if desired, to the persons giving correct answers; that if it is not desired to distribute prizes the device may be used without them, the mental gratification of answering the questions correctly sufficing.

It was further stipulated that a statute of the State of Illinois defining and prohibiting gambling devices, and certain ordinances of the City of Chicago relating to gambling devices and gaming implements were in full force and effect at the time of the transaction in question.

A duplicate of the punch board was received in evidence and is included in the record presented on this appeal. The board is designated as an "Examination Game." A printed slip pasted on the board bears this language: "Gardner's Examination Game—Educational—Instructive—Entertaining. For use of Clubs, Schools, Socials, etc. More interesting than the Cross Word Puzzle."

There are 2,000 paper covered compartments or cells in the board in each of which reposes the small rolled slip of paper heretofore indicated. The player removes from the compartments as many of the questions as are agreed upon. He then proceeds to answer the questions he has drawn. The printed answer list accompanying each game contains 8,000 supposedly correct answers. At the conclusion of the game the answers of the participants are compared with the correct answers on the printed list to determine the proficiency of the players.

Defendant, to support his contention that the merchandise was of unlawful character for the purchase price of which he is not liable, relies on pars. 299 and 300 of ch. 38, Cahill's 1931 Illinois Revised Statutes, which are as follows:

"Sec. 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That

it shall be unlawful for any person, firm or corporation, as owner, agent or otherwise, to manufacture, sell, lease, or hold, or offer for sale or lease to another any clock, joker, punch board, tape or slot machine, or any other device upon which money is staked or hazarded, or into which money is paid or played upon chance, or upon the result of the action of which money or valuable thing is staked, bet, hazarded, won or lost. . . .

"Sec. 2. Every such machine described in this Act is hereby declared a gambling device, and shall be subject to seizure, confiscation and destruction by any municipal, or other local authority, within whose jurisdiction the same may be found."

Defendant's position is tenable if the boards come within the prohibitions of this statute inasmuch as another section of the statute declares that "it shall be unlawful to bargain for the sale . . . of any gambling machine described in this Act, or to collect money or to take compensation for such sale . . . ." Cahill's St. ch. 38, ¶ 302. This statute did not contemplate that the articles enumerated were unlawful *per se* as gambling devices, but declares in plain terms that the articles mentioned, or any others not specified, are and become unlawful if they are devices "upon which money is staked or hazarded, or into which money is paid or played upon chance, or upon the result of the action of which money or other valuable thing is staked, bet, hazarded, won or lost."

The record does not disclose any intention on the part of plaintiff to sell the boards as gambling devices nor any intention on the part of defendant to use them for unlawful purposes. Defendant did not advise the trial court to what use they were put. The record is silent as to whether he used them or sold them. All that we have is his bald announcement to plaintiff four months after the purchase and delivery of the merchandise that he would not pay for same because

they "are for gambling purposes" without a word of explanation as to what he did with the boards. Thus he seeks to escape liability. It is not sufficient to argue that the boards might be used for gambling purposes; so might a thousand other games. Practically every game for adults and children sold throughout the United States possesses potentialities for gambling, but their sale is not rendered thereby unlawful.

While this "question game" is manufactured in the form of a punch board, in our opinion it lends itself less readily to gambling operations than to innocent educational amusement. Those who indulge in the business of using punch boards for gambling purposes as a rule prefer a board that affords fast play and just as fast pay. It strikes us that playing the board or game in question is too slow and cumbersome a process to appeal to those who might wish to profit from persons who have an urge or desire to gamble.

There is no evidence in the record as to just how these boards might be operated for gambling purposes. That they could must be conceded, but it is exceedingly unlikely that they would appeal to the gambling spirit or attract the interest of anyone as a gambling proposition. The only element of luck or chance is in the choosing of the compartments from which the players draw their questions. Their proficiency in answering them is determined solely by the extent of their information and knowledge of a diversity of subjects. It is apparent that the element of knowledge and information predominates over the element of chance in playing the game and the courts of review of this and other jurisdictions have consistently held that, where elements of skill, judgment, adroitness or knowledge predominate over the element of luck or chance, the game cannot be said to be a gambling device within the meaning of the statute declaring such a device or game to be unlawful.

This court considered a somewhat similar question in *D'Orio v. Catalano,* 260 Ill. App. 626 (case No. 34,342, in which an opinion was filed by this court March 11, 1931, but not reported in full), where the game consisted of a combination checker board and punch board. Each of the holes in the punch board contained a slip of paper containing a problem in checkers. The object of the game was to solve the problem in a solitary game of checkers by pitting one's skill against the predetermined moves printed on the slip. The players were required to pay 10 cents to draw a problem and prizes were awarded for the various degrees of skill shown in solving the checker problems presented on the slips. In its opinion the court said:

"The fact that the boards sold to defendant might be used for an illegal purpose cannot of itself make the sale illegal and void. It was so held in *Lipault v. Iowa Novelty Co.,* 204 N. W. 252, where the court said:

" 'That much merchandise sold on the market and a subject of legitimate commerce, can be used for gambling purposes, is to be conceded, and where the merchandise has a legitimate use as well as a gambling use, before the purchaser can refuse payment he must, among other things, prove that the seller knew it was to be used for unlawful purposes.'

"The stipulated facts upon which the case was presented to the court do not indicate that plaintiff had knowledge of the use to which defendant expected to put these boards, nor is there any evidence or statement of record indicating the character of defendant's business, or that defendant was engaged in a business in connection with which these boards might be used unlawfully. If, for instance, the merchandise was purchased by defendant for the purpose of resale to individuals who might employ the boards as tests of skill to solve the checker problems contained on slips

in the punch board, the use would be legitimate. On the other hand, it may well be that they were intended for gambling or games of chance, if the device and plan can be said to constitute a gambling device, but in the absence of evidence to show such intent and knowledge thereof by the seller, we cannot indulge in the presumption.''.

The reasoning and conclusion of the court in the *D'Orio* case are equally applicable to the situation presented in the instant case and we find no merit in defendant's contention that he is not liable for the agreed purchase price of the merchandise. The boards or games in question here were not inherently gambling devices and no evidence was offered on the trial as to the use made of them or intended to be made of them.

For the reasons indicated the judgment of the municipal court is affirmed.

*Affirmed.*

GRIDLEY and SCANLAN, JJ., concur.