ROUSE, SHERIFF, *v.* SISSON.

(In Banc. Jan. 20, 1941.)

[199 So. 777. No. 34342.]

R. C. Cowan, of Gulfport, and **Robert S. Newton**, of Wiggins, for appellant.

Heidelberg & Roberts, of Hattiesburg, and **Gardner, Backstrom & Gardner**, of Gulfport, for appellee.

Argued orally by **Robert S. Newton,** for appellant, and by **Roland W. Heidelberg,** for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellee has invented, and has letters patent pending for, an electric coin-operated machine, generally referred to as an I. Q. or intelligence quotient machine. He was about to install one of them in the County of Stone, but was notified by appellant, the Sheriff of the County, that appellant considered the machine a gambling device and that it would be seized and confiscated. Appellee thereupon brought this suit for injunction, which, on the hearing, was sustained by the court, and the sheriff has appealed.

Each of these machines is stocked with printed questions, about 3,000 questions to the roll. The player deposits five cents in the coin receptacle, whereupon one of the printed questions will appear in full view behind a glass plate, and simultaneously therewith an automatic timing device starts operating, so that the player must answer the question within the 20 seconds allowed by the timing device. With each question, and printed thereon, are given from 2 to 7 alternative answers, only one of which is correct. Each of these alternative answers is designated by a numeral, and on the machine are 7 keys similar to typewriter keys, and on each key is a numeral, in a series from 1 to 7. There are two other keys, on one of which is the word "True" and on the other the word "False," so that sometimes the question is whether the statement which appears behind the glass plate is true or false, and may be answered by the true or false keys instead of the numbered keys.

When the player has deposited the coin and in response thereto the printed question has come into view, the player reads his question and the related alternative answers thereto. He then determines upon the alternative answer which according to his knowledge or judgment is the correct answer and depresses the corresponding key. If his answer be correct, the machine automatically awards him a cash prize, the amount of which he has

been advised before the commencement of the play. When the play is complete, the printed question then protrudes from the machine in such manner that the player may obtain it, and on the reverse side thereof he will find printed the correct answer, together with the references which will verify its correctness. The used printed question is not again used in the same machine, but disappears from it in the manner stated.

Instructions are printed on the face of the machine as to how it is to be operated; and there are printed cards showing the subject or subjects from which the questions presently being asked by the machine are taken, as well as the amount of the award for the correct answers. The questions are taken from current events or other topics of popular interest, and it is sought to adjust the questions so as to bring them into relation with the particular locality; that is, a machine located in an industrial center will contain questions having particular reference to the industries thereof, or in a shipping center to shipping, and so on.

One of the objects in thus selecting the questions with which to stock a machine in a particular locality from time to time is to so frame the questions and the verifications and references on the back thereof as to advertise products or merchandise or literature, and so on, in which the particular locality would be more than generally interested, and thereby to obtain a revenue for the operation of the machines from advertisers of such products, merchandise, literature, etc.

The proof is that there are no arrangements within the machine by which the result will be otherwise than to give the answer which the player has determined is correct. There are no mechanical devices within or about the machine by which the will of the player may be diverted, or by which if he give the correct answer he may by any chance be cheated of the award which he would be entitled to receive upon making the correct answer. The operations of the machine throughout are positve and

directly responsive and are not beset by any hazards or chances within the mechanism of the machine, which would permit any interference with or deflection from the will and control of the player. The operations are as fully responsive to the will of the player as is the case when the key marked ''a'' on a typewriter is depressed and the letter ''a'' will appear on the typewriter sheet.

Two contentions are made by appellant and the first is that the machine is a gambling device. There is and can be but little difference in the authorities that to condemn a device or program as gambling there must be involved as a substantial feature in the operation the element of uncontrolled and uncontrollable chance. But we have already taken some pains in the statement of the facts to show that under the undisputed proof, the processes of the machine are under the absolute control of the player from start to finish, and its result, that is to say, the answer given is exactly the result or answer which the player intended that it should give, and if the answer be wrong, there is nothing in the machine which produced the wrong answer but the error was wholly of the player himself. The machine does exactly as the player directs it to do, and thus there is no more room to say that there is gambling in its operation by the player than to say that a person may gamble with himself.

But it is said that there is another party concerned in the transaction, namely, the owner or lessee of the machine who charges a fee of five cents for each play, which fee the machine collects for him when the fee is inserted in the slot, and that the owner or lessee thereby wagers with the player that the latter will not be able to make the correct answer, while at the same time the player wagers with the owner or lessee that the former will give the correct answer and thereby obtain the award or prize stipulated before the play begins. In other words, that there is a wager and, therefore, a gamble.

If in the operation and its result the owner or lessee,

or any other person than the player himself, had or retained any substantial measure of control over what that result should turn out to be, or if within the machine itself or its operations there were any arrangements by which through any fortuity or chance the machine would not precisely respond to the directions of the player, from the beginning to the end, there would be another case from that now before us.

But what we have here is a case where the result is determined solely by the knowledge or want of knowledge of the player himself. It falls therefore within the category or classification of a game of skill, and long ago, in Wortham v. State, 59 Miss. 179, it was held by this court that a game of skill is not a game of chance. That case involved the billiard game, and while the court recognized that in such a game there was an element of chance, which might befall owing to the want of skill in a particular player, the court said "it is the character of the game, and not the skill or want of skill of the player, which brings it into or excludes it from the prohibition of the statute."

When the billiard table is accurately constructed and its surface is upon a perfect level, and the billiard balls are of standard size and weight and of perfect contour, and the cues are of standard length and are properly tipped, the result of the game played therewith becomes one in which the skill, aptitude and judgment of the player are the controlling features; and all the elements of chance are within the player himself and not at all in the devices by which the game is played, and hence there is no more of a gamble there than to say that in all intelligently directed human effort there is a gamble.

It follows from what has been said that if the owner of a billiard table and its equipment, all in good condition as aforesaid, admit a player charging him a fee, say of fifty cents, to play thereon for say an hour with the offer in advance to pay to the player a prize of say one dollar in case the player shall make above a certain high

score, this is no gambling game because the essential element of chance, as that element is known to the law in such cases, is not present. There the player obtains a prize or reward for his skill, aptitude and judgment, for something which he had within himself and not for a product which the operated devices imposed upon him beyond and outside of the capabilities of his own control.

If, then, the game of billiards is not a game of chance, a gambling game, as the court has held, then for the stronger reason the operation of the machine here in question is not a gambling operation for this I. Q. machine is absolutely under the control of the operator, while in billiards some elements of what might be considered as chance are undoubtedly present. And we have already called attention to the fact that the questions to be propounded are such as are within the knowledge of the people in the community where the particular machine is operated, and are not to be of such character as to be, when fairly considered, safely beyond the knowledge of any of the players, so that thereby the answers, whoever made them, would be nothing but guesswork.

We may further illustrate the principle which we are here maintaining by the following example: A person owns or is the lessee of a hall or large room, equipped with desks, chairs, and pens and ink. He conducts therein tests in spelling. Each entrant is charged a fee of fifty cents, and upon his entrance is handed an envelope containing a printed sheet upon which are printed fifty words taken from the old blue-back speller, but each word, as printed, is spelled in three, four, or five alternate ways only one of which, as to each word, is correct. The entrant is allowed a fixed time, say one hour, and takes his printed sheet and places a check mark opposite what he considers the correct spelling for each word, and when he has completed the check for each of the fifty words, he signs his name to the sheet and hands it in. Under the rules, previously announced, if the entrant correctly checks as many as forty-five words he receives a prize

or award of three dollars, and if he correctly checks all the fifty words, his prize or award is five dollars. But if he does not correctly check as many as forty-five words, he receives no prize or award. And the blue-back speller is in the hall available to him after he has handed in his sheet, so that he may verify his work.

We suppose none could successfully maintain that the program as above stated is a gambling program, and the analogy with the case before us is obvious when we substitute the answer to the alternatives as made there by the check mark by a pen, with the method used in the I. Q. machine by the pressure of one among its alternative keys.

The other point made by appellant is that the machine is at least a slot machine condemned by Chapter 353, Laws 1938, to which appellee makes as one of his replies that it is a slot machine by which a game may be played or a form of diversion had as authorized by Chapter 122, Laws 1940.

It was not the purpose of Chapter 353, Laws 1938, or similar statutes, to condemn a machine as being a slot machine simply because its initial operation is by way of the insertion of a coin in a slot. Rather there must be applied the maxim noscitur a sociis, and looking to the associated devices or machines or games mentioned in those statutes, we observe at once the condemnation is against those which, in their nature, are gambling devices. We see in actual operation all around us every day machines which technically may be designated as slot machines but which no human mind ever associated with something condemned by law. One illustration is sufficient: When entering a street car or public street bus, the passenger inserts in a slot the coin which pays his fare, and the machine thereupon rings up the fare, and indicates that it has been paid, as well as the total of the fares paid, but this is not a slot machine, merely because its initial operation is by way of the insertion of a coin in a slot.

Inasmuch as the machine here in question is not a gambling device, it is not a slot machine within the purview of Chapter 353, Laws 1938, or of similar laws.

Affirmed.

**Roberds, J.**, took no part in the consideration or decision of this case.

DISSENTING OPINION.

**Smith, C. J.**, delivered a dissenting opinion.

Section 1 of Chapter 353, Laws of 1938, formerly Section 821, Code of 1930, forbids a person or corporation to have "in possession, own, control, display, or operate any . . . slot machine . . ." The machine here is a slot machine, i. e. "A machine, the operation of which is started by dropping a coin into a slot," Webster's New Int. Dict., 2d Ed., and therefore within the prohibition of the statute unless the generic term "slot machine" should be limited by judicial instruction so as not to include it. The asserted ground for so limiting the term is that when the maxim noscitur a sociis is applied, it will appear that the prohibition of the statute is directed only against machines that are gambling devices. I do not know whether the other things prohibited by the statute are gambling devices or not, and will not pause to inquire for in Crippen v. Mint Sales Company, 139 Miss. 87, 103 So. 503, this court held that whether a slot machine was a gambling device or not was immaterial under the statute. After the decision of which case, the statute was re-enacted without change as Section 821, Code of 1930. It is true that the decision in that case was placed on two grounds: (1) that the slot machine there under consideration was a gambling device, and (2) whether it was such a device or not was immaterial. Nevertheless, neither holding was dicta and both are within the rule of stare decisis.

It may be, as to which I express no opinion, but for the purpose of the argument only will assume, that the

amendment of Section 821, Code of 1930, by Section 1, Chapter 353, Laws of 1938, authorizes the term "slot machine" to be so limited by construction as to include only such as are gambling devices, but I am of the opinion that this machine is a gambling device. A slot machine is generally held to be a gambling device where the one who plays it "stands to win or lose money, trade or checks by hazard or chance." 27 C. J. 989. The hazard or chance may be only one of the elements therein, and, under this statute, it need not be the predominating element in the use of the machine, for the slot machines expressly excluded therein therefrom are machines in the use of which no element or chance whatever appears.

The elements of chance which here confront the one who plays this slot machine are: (1) that the answer to the question disclosed by the machine, after he deposits a coin in the slot thereof, will be within his general knowledge or information; and (2) that he can call to mind that answer within the twenty seconds he is allowed therefor. He would be a remarkably intelligent and well-informed person who could always, or even in most instances, be sure, before he sees the question, what the answer thereto is. For most young people, the hazard would predominate. Such a slot machine "attracts the youth, gets their money, and educates them in the gambling spirit," to prevent which is one of the purposes of the statute. Crippen v. Mint Sales Company, supra, 139 Miss. 87, 103 So. 504.

In order not to overload this statute, it should be borne in mind that some instruments into which coins are to be inserted through a slot therein are not within the definition of the term slot machine hereinbefore set out, but are instruments "operated on the principle of a slot machine; as a slot machine device on a telephone," Webster, op. cit., or a simple device for depositing fares on street cars, busses, etc. The term "slot machine" is both a noun and an adjective, and as here used is the former.

The decree of the court below should be reversed, and this slot machine declared to be within the prohibition of the statute.

## DISSENTING OPINION.

**Alexander, J.,** delivered a dissenting opinion.

I am constrained to dissent from the views of the majority of the court, because of the conviction that the challenge of the device is not primarily to the intellect, but to the gambling spirit or instinct. The robe of respectability with which it sought to be clothed is insufficient to hide its naked purpose. The player wins or loses something on every play. To charge that all slot machines are gambling devices would be as unjust as to save gambling devices from seizure because the amount of winnings depends upon the intelligence quotient of the player. It is not an indictment against our youth to suggest that if two such machines were placed side by side, one to stimulate the intellect, and the other to stimulate the betting instinct, the latter would be the better investment for the owner. When both features are combined in one machine, human experience can predict with certainty a total eclipse of the intellectual factor.

In the case before us, when the query card, or question, comes up, the operator either (1) does not know the answer, or (2) does know it. In the former event he has either (a) lost his bet, or (b) he may prolong the chance factor by a haphazard guess; in the latter event the appearance of a card or question whose answer he knows, is equivalent to the winning of the chance upon which he hazards his coin. He has thereupon won his bet, and, moreover, knows this. Thenceforth it is a mere matter of cashing in on his good fortune. Further operation consists of pressing the proper key, and the pay-off follows mechanically. Such operation is quite analogous in simplicity and certainty to the formal demand upon a croupier to make payment to a player for whom the turn-

ing of a roulette wheel has transformed uncertainty into certainty.

Is it different in principle or as an appeal to the gambling instinct, that in one case a card which turns up is an ace instead of a deuce, while in another case it is known, instead of unknown? In either case the hazard is finally resolved upon the disclosure of the card, and the collection of the stake becomes merely a mechanical detail.

In the instant case the gamble is that the operator will turn up a card or question whose querry he can answer, plus the additional chance that he answers promptly. The operation of the device does not create knowledge; it merely reveals it. He has won or lost when the card turns up. Nor can it be exonerated from condemnation because it gives some play to intellectual preparedness. The factor of chance vitiates the entire operation. It cannot be leavened into legality by a few grains of sense. The operation is at best a mulatto product of the union of luck and learning. Its status and stigma are the result of this infusion of chance. It illustrates the simple truth that that which is half clean is soiled. Plainly from the language of the statute (chap. 353, Laws 1938), it is a "slot machine" which delivers something "of value in varying quantities;" plainly from the spirit of the statute, it is a device calculated to "attract the youth and educate them in the gambling spirit."