People of State of Illinois, Plaintiff-Appellee, v. One Slot Machine Owned by Telequiz Corporation, Defendant-Appellant.

### Gen. No. 10,479.

Opinion filed September 14, 1951. Released for publication October 2, 1951.

Barr & Barr, of Joliet, for appellant.

Ivan A. Elliott, Attorney General, of Springfield, and John Irving Pearce, State's Attorney of Will County, of Wilmington, for appellee.

Mr. Justice Dove delivered the opinion of the court.

The only question presented for determination upon this record is whether a device known as "Quiz Bank," an exhibit in this case, which is owned by appellant, Telequiz Corporation, a Delaware corporation, is or is not a gambling device as defined by par. 342, chap. 38, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 37.272].

The record discloses that during the night or early morning of September 14 or 15, 1950, the Illinois State Police seized twenty devices, or machines, in a number of taverns and restaurants in Will county. Nineteen of the twenty machines were the type of device commonly called a slot machine, and the twentieth machine was the Quiz Bank machine in controversy here. The following day a petition was filed in the county court of Will county in the name of the People of the State of Illinois acting through the Attorney General of this State and the State's Attorney of Will county. This petition, after reciting that the Illinois State Police had seized these twenty slot machines and the money contained therein, charged that they were all illegal gambling devices contrary to the statute and prayed for an order finding said machines contraband property and subject to confiscation and directing their destruction.

The Telequiz Corporation, appellant herein, appeared and moved for leave to intervene and for a severance of the cause with respect to the one machine owned by it and known as the "Quiz Bank." This motion was sustained, and the Telequiz Corporation filed

its answer to said petition setting up that it was the owner of said Quiz Bank machine and denying that it was a gambling device within the meaning of the statute and requested the court to enter an order finding said device and the money contained therein not contraband property and not subject to confiscation, directing that said machine be not destroyed and ordering the State Police and the State's Attorney and Sheriff of Will county to deliver said machine and money therein contained to appellant. In addition to its answer, the Telequiz Company also filed in the proceedings its petition setting forth that it was the owner of said Quiz Bank machine and praying for an order directing the return of the machine and any money contained therein to it.

The Candlelight Restaurant, where the device was found by the State Police, was not the owner of the device and is not a party to this proceeding. At the hearing in the county court, the machine itself and a photograph thereof was admitted in evidence. The photograph is in the record, and the machine itself accompanied the record to this court, and upon the oral argument of this cause in this court the machine was exhibited to the court and its operation described and commented upon by counsel.

The record, as well as an examination of the machine itself, discloses that the device is electrically operated and has a cord attached which may be inserted in any ordinary electric light socket or plug. When so connected, it is a highly illuminated, complicated, and attractive article. It is housed in a window-type cabinet with a back glass and a screen containing various markings and figures. As a player approaches the device, it appears on the back glass on the top of the machine what the odds will be on the next play of the machine, which is shown by a light illuminating one

figure of a row of figures, of which two is the lowest number and twenty the highest number. The player, therefore, knows in advance before he puts a coin in the machine that if he answers the question that will appear on the screen correctly and within the time allotted he will receive payment from the machine on the basis of what odds are showing on the back glass. The machine will only take nickels and will take a minimum of one nickel and a maximum of six nickels. The maximum prize able to be won, therefore, is one hundred and twenty nickels. There is no jackpot on the machine.

After the player has inserted either one nickel or any number but not more than six nickels, a light will flash which indicates the number of coins which have been inserted, and when the player is ready he presses the button marked "Start," and thereupon a question is flashed on the screen in the aperture on the front of the machine with multiple answers numbered one to six immediately beneath the question. The player selects the answer he chooses which he thinks is correct and indicates the same by pressing one of the keys numbered one to six which are located beneath the aperture through which he looks at the screen upon which the question and alternate answers are flashed. This key corresponds to the number of the answer which he thinks is correct. If his answer is correct, the machine will so indicate by a light which flashes in back of the picture of a radiant person wearing a mortarboard and of smiling countenance, indicating a correct answer. If the answer is incorrect or if the time allotted for answering expires without a selection by the player, the light flashes behind the picture of a despondent person indicating an incorrect answer and the shutter arrangement on the screen, viewed through the aperture, opens up and indicates to the player the correct answer. The time arrangement on

the machine allows a maximum time of two and one-half seconds and a minimum time of one second to answer a given question, and this mechanism is operated on a series of correct answers or compensation paid out by the machine and is so adjusted that a series of eight or ten correct answers will automatically reduce the time for the next questions until such time as an incorrect answer is recorded. If the machine is in its tightest position of one second, then within twenty plays, all incorrect, the machine would be completely opened to the two and one-half second range. Each time a question is answered correctly this electrically controlled arrangement tightens up two notches, the effect of which is to reduce the time a quarter of a second, that is, for each correct answer, the time in which to answer the following question is automatically reduced one-quarter of a second until the minimum time of one second is reached. For an incorrect answer the mechanism releases one notch, thereby increasing the time element one-eighth of a second but not beyond the maximum time of two and one-half seconds. There is no indication, externally, of this variation in time but, in order to keep the player cognizant of the shortness of time he has for his answers, there is on the front of the machine an hour glass figure with the words "Hurry, Hurry" and a light flashes behind this figure during the time that the player has in which to answer the question.

The machine contains a projector which throws a beam of light into a mirror set at an angle which, in turn, reflects the question under the screen seen from the front of the cabinet through the aperture, and the question, multiple answers and correct answer are contained in a roll of film in connection with six photocells, a sixteen millimeter single framing projector and electrical amplifier, all of which operate together so as to flash the question and multiple an-

swers on the screen, then opens the shutter showing the correct answer, or in the case of a correct answer, the selection mechanism operates in conjunction with the payout mechanism so as to eject the proper number of nickels in accordance with the prize or odds indicator on the top of the machine. If the player puts a nickel in the slot and the odds are two, he gets two nickels back. If he puts in two nickels and answers correctly, he gets four nickels back. The maximum number of nickels he can play is six, and the maximum odds is twenty to one. The evidence disclosed that the coin meter on this particular machine indicated that there had been approximately 31,000 nickels deposited in it and that 27,000 nickels had been paid out. If the player fails to answer the question in the time allotted he gets nothing, and if his answer is wrong he gets nothing except the correct answer.

The roll of film in the machine in question is produced by Advance Film Company and contained 6,000 different questions of common interest in five major categories,—sports, arts, including music, literature or philosophy, famous historical people and geography, and one general category. The player does not have a choice of category. A witness familiar with the machine testified that the questions are such that any layman or professional man could or should know the answers and that there are no questions of a highly technical nature or any trick questions. The questions, he testified, were submitted by various individuals, including school teachers, on a piece-work basis, and these persons were usually college graduates. He stated that some of the questions are "How many toes are there on a cow?" "What day is Ground Hog day?" "Which is the largest ocean?" and "What colors make purple?"

The trial court found this device to be a gambling device within the meaning of our statute, ordered the

destruction thereof by the Sheriff of Will county under the supervision of the State's Attorney and directed the money contents of said machine be turned over to the County Treasurer for the use of the schools of Will county. To reverse this order, The Telequiz Corporation prosecutes this appeal.

Par. 342, chap. 38, Ill. Rev. Stat. 1949, provides:

"Every clock, tape machine, slot machine or other machine or device for the reception of money on chance or upon the action of which money is staked, hazarded, bet, won or lost is hereby declared a gambling device and shall be subject to seizure, confiscation and destruction by any municipal or other local authority within whose jurisdiction the same may be found."

Counsel for appellant argues that the elements which are required to be present in order for a machine to be a gambling device are entirely absent here; that it is not a device for the receipt of money on chance because the player knows before he starts what the amount of the prize will be if he is successful and that the only factor which enters into his winning a prize is his skill or ability in being able to answer the question which appears on the screen within the time given him to do so. Counsel insist that in the operation of the Quiz Bank the money placed in the machine is not staked, hazarded or bet upon the action of the machine and that the prize stipulated is not lost or won upon the action of the machine but the player receives the prize dependent solely upon his own knowledge, adroitness and sufficiently fast reaction which enables him to answer the submitted questions within the time permitted. In support of this contention and argument counsel cite three Illinois cases, *Almy Mfg. Co. v. City of Chicago,* 202 Ill. App. 240; *D'Orio v. Catalano,* 260 Ill. App. 626; and *Question Game Co., Inc. v. Ploner,* 273 Ill. App. 187.

385

Counsel for appellant state that the Illinois courts have not previously determined whether this particular type of machine is or is not a gambling device but that the Supreme Court of Mississippi held in *Rouse v. Sisson,* 190 Miss. 276, 199 So. 777, 132 A. L. R. 998, that a device which was practically an exact counterpart of the Quiz Bank was not a gambling device, and counsel, in perfect fairness, calls our attention to *Hernandez v. Graves,* 148 Fla. 247, 4 So. (2d) 113, where the Supreme Court of Florida held a device of the same type as the Quiz Bank machine to be a gambling device.

*Almy Mfg. Co. v. City of Chicago, supra,* was a proceeding in equity brought by the manufacturer and seller of a device labeled ''Automatic Cashier and Discount Machine'' seeking to enjoin the municipal authorities of Chicago from seizing or preventing the use and operation of its machines. The machine had been seized by the police on the theory that it was a gambling device. The character of the machine and its operation is fully set forth in the opinion, and in holding that it was a gambling device the court said: (p. 244–5) ''The purpose of the machine, its quality and character, the possibilities of its operation and the manner in which it is susceptible of use are controlling factors in determining whether it is a gambling device in fact or not.—While it is true that the player will receive five cents in trade for the nickel which he places in the slot of the machine, yet that is not what induces the player to make the venture. It is the lure and the chance to get maybe ten, fifteen or twenty-five cents as a return for the five cent investment. It is the lure of the game that makes it gambling. This is the attraction that incites the cupidity of the player.

''Again, the machine is not an 'automatic cashier and discount machine.' To so characterize it is simply another attempt to disguise its real character. The ease with which the mechanism can be manipulated

so that it may be diverted from its apparent innocent character to that of a gambling device brings the machine within the statute and the ordinance as a gambling device. The machine gives forth nothing but a check. The check takes the place of the nickel deposited in it, therefore it does not perform the function of a cashier, because the check takes the place of the nickel and must be handed to the person who returns to the player the value of the check.

"Upon what theory the machine performs the function of a 'discount machine' we are unable to discern either from the machine itself or anything we find in the record. The machine is an exhibit in the case and is before us. We have examined it, operated it and tested its various capacities for good or evil, and from the record and the machine, and its manner and method of working, we are of the opinion that it is a gambling device and under the ban of the law. The machine is evidently masquerading under a false title, and is, we think, akin to a lottery in its operation, coming within the definition of the lexicographers of a lottery, which is, 'a scheme for the distribution of prizes by lot or chance'; 'a hazard in which sums are ventured for the chance of obtaining a greater value.' The hazard of small amounts to win larger is gambling. The hazard of putting five cents in the slot of this machine with a chance of winning ten, fifteen or twenty-five cents stamps it as a gambling device and, as the evidence shows, the machine can be so manipulated that the winning of more than the amount invested is chance in which neither the will nor the skill of the operator can influence the result, which further characterizes it as a gambling device."

*Question Game Co., Inc. v. Ploner, supra,* was a civil action brought to recover the purchase price of a quantity of punch boards. The defendant claimed that the boards were gambling devices and under the law plain-

tiff was precluded from maintaining an action for the recovery of the purchase price. After describing the punch boards, the court, in holding defendant liable for the contract price of the punch boards, said that before the sale of such boards could be held unlawful it must appear from the evidence that the seller knew they were intended to be used for gambling; that the record did not disclose how the boards might be operated for gambling purposes; that it was not sufficient to argue that the boards might be used for gambling purposes because practically every game for adults and children sold throughout the United States possesses potentialities for gambling but their sale is not thereby rendered unlawful. *D'Orio v. Catalano, supra,* was also a civil action to recover the purchase price of a combination checker board and punch board, and the Appellate Court in reversing a judgment of the municipal court of Chicago for the defendant said the fact that the boards sold to the defendant might be used for an illegal purpose could not, of itself, make the sale illegal and void. There is nothing held in any of the foregoing Illinois cases, relied upon by appellant, determinative of the question involved in this proceeding.

In *Rouse v. Sisson,* 190 Miss. 276, 199 So. 777, 132 A. L. R. 998, the device involved was an electric coin-operated machine generally referred to as an I. Q. or Intelligent Quotient machine. The plaintiff was the inventor of the machine and was about to install one in Stone county but was notified by the sheriff of that county that he, the sheriff, considered it a gambling device and that it would be seized and confiscated. Thereupon the inventor instituted injunction proceedings against the sheriff and from a decree awarding an injunction against the seizure and confiscation of the device, the sheriff appealed. After describing the machine, which contained questions and answers and awarded prizes for the correct answer given within a

specified time, the court said: "If in the operation and its result the owner or lessee, or any other person than the player himself, had or retained any substantial measure of control over what that result should turn out to be, or if within the machine itself or its operations there were any arrangements by which through any fortuity or chance the machine would not precisely respond to the directions of the player, from the beginning to the end, there would be another case from that now before us. But what we have here is a case where the result is determined solely by the knowledge or want of knowledge of the player himself. It falls therefore within the category or classification of a game of skill, and long ago, in *Wortham v. State,* 59 Miss. 179, it was held by this court that a game of skill is not a game of chance." The CHIEF JUSTICE and JUSTICE ALEXANDER dissented, and in his dissenting opinion the CHIEF JUSTICE, after quoting the statute which forbade a person or corporation to have in its possession any slot machine, stated that he would assume that the term "slot machine" included only such as are gambling devices and then continued: "I am of the opinion that this machine is a gambling device. A slot machine is generally held to be a gambling device where the one who plays it 'stands to win or lose money, trade or checks by hazard or chance.' 27 C J 989. The hazard or chance may be only one of the elements therein, and, under this statute, it need not be the predominating element in the use of the machine, for the slot machines expressly excluded therein therefrom are machines in the use of which no element of chance whatever appears. The elements of chance which here confronts the one who plays this slot machine are: (1) that the answer to the question disclosed by the machine, after he deposits a coin in the slot thereof, will be within his general knowledge or information; and (2) that he can call to mind that answer within twenty seconds he is

389

allowed therefor. He would be a remarkably intelligent and well informed person who could always, or even in most instances be sure, before he sees the question, what the answer thereto is. For most young people the hazard would predominate. Such a slot machine attracts the youth, gets their money and educates them in the gambling spirit, to prevent which is one of the purposes of the statute.'' In his dissenting opinion, JUSTICE ALEXANDER wrote: ''I am constrained to dissent from the views of the majority of the court, because of the conviction that the challenge of the device is not primarily to the intellect, but to the gambling spirit or instinct. The robe of respectability with which it sought to be clothed is insufficient to hide its naked purpose. The player wins or loses something on every play.—When the query card or question comes up, the operator either (1) does not know the answer, or (2) does know it. In the former event he has either (a) lost his bet, or (b) he may prolong the chance factor by a haphazard guess; in the latter event the appearance of a card or question whose answer he knows, is equivalent to the winning of the chance upon which he hazards his coin. He has thereupon won his bet and, moreover, knows this. Thenceforth it is a mere matter of cashing in on his good fortune. Further operation consists of pressing the proper key, and the pay-off follows mechanically.—In the instant case the gamble is that the operator will turn up a card or question whose query he can answer, plus the additional chance that he answers promptly. The operation of the device does not create knowledge: it merely reveals it. He has won or lost when the card turns up. Nor can it be exonerated from condemnation because it gives some play to intellectual preparedness. The factor of chance vitiates the entire operation. It cannot be leavened into legality by a few grains of sense. The operation is at best a mulatto product of the union of

luck and learning. Its status and stigma are the result of this infusion of chance. It illustrates the simple truth that that which is half clean is soiled.''

*Hernandez v. Graves,* 148 Fla. 247, a Florida case reported in 4 So. (2d) 113, was an original proceeding in habeas corpus. The petitioner alleged that he was in custody of a constable under a warrant issued by a justice of the peace which charged him with the unlawful possession of an electric coin operating I. Q. or Intelligence Quotient machine similar in many respects to the Quiz Bank device involved in the instant proceeding. The question involved was whether the possession or operation of the I. Q. machine constituted a violation of the gaming statutes of Florida. In holding that it was, the court, after quoting the applicable provisions of the statute, Chapter 18143, said: ''Under the statute it is a criminal offense to possess any slot machine or device if it is adapted for use in such a way that as a result of the insertion of any piece of money or coin or other object, such machine or device is caused to operate or may be operated, and by reason of *any* element of chance or unpredictable outcome of such operation unpredictable by him, the user may receive or become entitled to receive any piece of money.

'' (1) In this case the machine or device is a slot machine or device that is adapted for use in such a way that its operation as the result of the insertion of a coin involves an element of chance for the operator to win a stated cash prize if he correctly answers an unknown or unpredictable question in twenty seconds after it is disclosed by the machine, or to lose the coin inserted in the machine if the player does not, within twenty seconds after it is shown, correctly answer an unpredictable question posed by the machine and not known to, or controlled by, the player. Such operation of the machine affords an element of chance or unpredictable outcome of the operation of the machine

391

involving the winning of a stated cash prize or the loss of the coin inserted in the machine. This necessarily is a violation of the quoted statute. See *Weathers v. Williams*, 133 Fla. 367, 182 So. 764; *Eccles v. Stone*, 134 Fla. 113, 183 So. 628. The *question* is made known only after the coin has been inserted in the machine.

"The alternative answers to the question, shown with the question by the machine, tend to confuse and delay even a well informed, skillful and composed player of the machine who is required to indicate within twenty seconds the correct answer to the question that was unknown to, and unpredictable by, the player before the question was posed by the machine and the twenty seconds of time to answer began to run."

Three of the Justices of the Florida Court dissented in these words: "We are unable to follow the reasoning advanced. The unsoundness of the contention is that there is no element of chance whatsoever in the machine, and whether or not the player is by the machine compensated rests exclusively on the correctness or incorrectness of the answers of the player to the questions propounded and to answer the same within the twenty second period. It is in many respects similar to receiving a reward or prize for answering correctly certain questions propounded as in a spelling 'bee' where a prize is given to the one spelling correctly a list of words. If a merchant offers a prize of $100.00 to the foot ball player making the first touch down, or a baseball player for knocking a home run, it cannot be classified as gambling. We are unable on this record to see a violation of Chapter 18143, *supra*. The power to make unlawful the above described machine is vested in the Legislature. See *Rouse v. Sisson*, 190 Miss. 276, 199 So. 777, 132 A. L. R. 998, where it was held that the machine above described was not a gambling device."

In *People v. One Pinball Machine,* 316 Ill. App. 161, this court held that a pinball machine was a gambling device. We there said that the element of skill was a negligible quantity as to most players of pinball machines, and in our opinion the element of skill is also a negligible quantity of a Quiz Bank device. In the course of our opinion (p. 168), we referred to the case of *City of Moberly v. Deskin,* 169 Mo. App. 672, and what we there quoted might be repeated here: "In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficient objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the inaccuracy and insufficiency of some of the old definitions of gambling that were made before the advent of the era of greatly expanded, diversified and cunning mechanical inventions."

The device involved in this proceeding is a slot machine and a gambling device. It is actuated by the insertion of money. It pays out money. It is a device as described by our statute for the receipt of money and upon the action of which money is staked, hazarded, won or lost. We are in accord with the reasoning of the majority opinion of the Supreme Court of Florida and with the dissenting opinions in the Mississippi case herein referred to. In the Florida and Mississippi cases, the machines gave the player twenty seconds to answer the submitted question. This Quiz Bank machine gave the player a maximum of two and one-half seconds to select a correct answer and register his answer. If he did so, the time mechanism became operative and the time was automatically reduced. One of the chances the operator took was that the ques-

393

tion which appeared would be one he could answer, and another chance he took was the length of time he had in which to select and record his answer. Counsel for appellant says the fact that the machine adjusts itself to the ability of the player and makes it more difficult for a skillful player to win than for one who is unskilled, should not be considered as evidence of its nature as a gambling device. This time adjustment is certainly not in the interest of the player. It redounds to the financial interest of the owner or custodian. We are inclined to agree with counsel for appellee that the fundamental principle upon which all slot machines operate is never to give the player a break.

It is idle to assume in the instant case that the person putting one nickel or six nickels in the slot of this device is doing it merely to test his intelligence, knowledge, or skill. The impelling motive is the hope of receiving the so-called prize money. The purpose of the machine is to arouse and stimulate the gambling propensity, the very propensity which the legislature, by the enactment of the statute, seeks to suppress. The element of chance is the soul of the transaction. (*Lang v. Merwin,* 99 Me. 486.)

The hope that by chance the odds will be substantial; the hope that by chance a question will float upon the screen which he can answer; the hope that by chance he will be given sufficient time to register his answer and the further hope that these chances will combine resulting in the player receiving as much as 120 times the amount required to set the device in motion stamps this machine as a gambling device.

The judgment of the county court of Will county is affirmed.

*Judgment affirmed.*