Taft, J.
The first contention of plaintiff is that the Court of Appeals erred in hearing the appeal as one on law and fact. Since the Court of Appeals heard this cause de novo in accordance with the provisions of Section 12223-21, General Code (now Section 2505.21, Revised Code), relative to the procedure to be followed where an appeal is taken on questions of law and fact, we have before us in a bill of exceptions only the evidence considered by the Court of Appeals and not that considered by the Common Pleas Court. Therefore, if the Court of Appeals erred in hearing the appeal as one on law and fact, we cannot determine whether the evidence presented to the Common Pleas Court would have required that court as a matter of law to render the same decision as did the Court of Appeals on the evidence presented to it; and we would necessarily have to remand this cause to the Court of Appeals with instructions to hear the appeal as one on questions of law. Section 12223-22, General Code (now Section 2505.23, Revised Code).
Whether the Court of Appeals erred in hearing the appeal as one on law and fact depends upon whether it is a “ chancery *333 case.” Meyer v. Meyer, 153 Ohio St., 408, 414, 91 N. E. (2d), 892.*
In Connelly v. Balkwill, 160 Ohio St., 430, 116 N. E. (2d), 701, paragraph one of the syllabus reads:
“Whether an action is legal and, therefore, appealable on questions of law only or equitable and, therefore, appealable on questions of law and fact is determined from the pleadings and the issues made thereby.”
In paragraph two of the syllabus it is pointed out that, where the petition indicates that “the primary or paramount issues raised are equitable and any” other relief sought “is merely incidental to the equitable relief sought,” the cause should be regarded as a “chancery case.”
For this reason, we have in the statement of the instant case rather fully described the allegations of plaintiff’s petition.
The fact that declaratory judgment relief is sought does not *334 necessarily prevent an action from being a chancery case. Sessions, Trustee, v. Skelton, 163 Ohio St., 409, 127 N. E. (2d), 378. But compare Bradford et al., Admrs., v. Micklethwaite, 163 Ohio St., 301, 127 N. E. (2d), 21.
In our opinion, it is apparent from the allegations of the petition that the primary relief sought is equitable and the primary and paramount issues raised are equitable. Certainly, the relief granted by the Common Pleas Court, as described in the statement of the case, was equitable relief. We therefore conclude that this is a chancery ease.
Plaintiff’s next contention is that the so-called “Skill Pool machine” is an amusement device and not a gambling device per se.
In its findings of fact, the Court of Appeals found that “plaintiff had” a substantial number of pinball “machines distributed at the locations of various licensed exhibitors in the city, ’ ’ and that 23 of these were of the same type as the so-called “Skill Pool machine” received in evidence and 179 of the same type as the so-called “Bally Beach Club machine” received in evidence. In its conclusions of law, the Court of Appeals held that each of these types of machines “constitute [a] ‘gambling’ device or machine within the meaning of Section 2915.15, Revised Code [formerly Section 13066, General Code], and the operation of such machines constitutes a ‘game to be played for gain’ within the meaning of Section 2915.04, Revised Code [formerly Section 13056, General Code], because both of such machines are predominately controlled by the element of chance,” and that “both of said machines constitute lotteries within the meaning of Article XV, Section 6 of the Ohio Constitution.”
Section 13066, General Code (now Section 2915.15, Revised Code), reads:
“Whoever keeps or exhibits for gain or to win or gain money or other property, a gambling table, or faro or keno bank, or a gambling device or machine, other than as is defined in Sections 13066-1, 13063 and 13064 of the General Code of Ohio, or keeps or exhibits a billiard table for the purpose of gambling or allows it to be so used, shall be fined * *
Admittedly, plaintiff keeps or exhibits all its pinball ma *335 chines “for gain” or “to gain money.” As the petition in effect alleges, that is its “business.” In doing so therefore plaintiff would clearly be violating Section 13066, General Code, if each of those machines is a “gambling device or machine” within the meaning of those words as used in that statute. If therefore each of the two types of machines received in evidence is such a “gambling device or machine,” then the Court of Appeals would have been encouraging violations of that statute if it had given plaintiff any relief with regard to those machines, and its judgment in dismissing the petition must be affirmed. See 24 American Jurisprudence, 438, Section 58.
Plaintiff does not contend that the “Bally Beach Club” type of machine is not a “gambling device or machine.” However, plaintiff does argue strenuously that the “Skill Pool” type of machine is not a “gambling device or machine.”
Generally, it may be said that the elements of gambling are payment of a price for a chance to gain a prise.
Admittedly, an operator of a “Skill Pool” type machine pays a price when he puts his nickel into the machine to operate it.
Plaintiff argues, however, that the right, to replay the machine, if a sufficient score is attained, by merely pushing a button without paying another nickel, does not constitute the prize necessary to have operation of the machine constitute gambling. We believe that the decision rendered by this court in Kraus v. City of Cleveland, 135 Ohio St., 43, 19 N. E. (2d), 159, and what was said in the opinion “per curiam” in support of that decision require us to reject this argument of plaintiff as unsound. It was said in that opinion:
“* * * for a game to constitute gambling, it must be one which is played for gain of money or a thing of value as the prize or reward.
“Appellees contend, substantially, that the only thing the machine affords to the player is amusement; that the tokens emitted have no intrinsic value; * * * that, therefore, they have no value to the player; and that anything which has no value cannot be said to constitute a prize or reward.
“* * * operation of the device may be accompanied by a return of an indeterminate number of tokens, which of course may *336 be used by the lucky recipient to repeat the operation of the device.
“Amusement is a thing of value. Were it not so, it would not be commercialized. The less amusement one receives, the less value he receives, and the more amusement, the more value he receives. Whoever plays the device and obtains tokens therefrom receives more value for his nickel, with respect to the amount of amusement obtained, than the player who receives none at all * * * the greater the amount of amusement received, the more valuable the prize.
“The minimum amount of amusement offered in each play is that which is offered without any return of tokens. Whatever amusement is offered through the return of tokens is added amusement which a player has an uncertain chance of receiving. This added amount of amusement, the procurement of which is dependent wholly upon chance, is a thing of value * * * the lure extended by the device to the player.
U # * #
“Since amusement has value, and added amusement has additional value, and since it is subject to be procured by chance without the payment of additional consideration therefor, there is involved in the game three elements of gambling, namely, chance, price and a prize.
“A device which, for a coin deposited therein, returns to all players a given amount of amusement, and, in addition thereto, returns tokens as reward, the number and frequency of which return depends upon chance, is a gambling device within the meaning of Sections 13056 and 13066, General Code, and an ordinance, as the one here involved, which authorizes the licensing of such device, is in conflict with the above-mentioned statutes and is invalid, notwithstanding a provision therein contained forbidding the replaying, cashing or redemption of such tokens.”
In Ward v. State, 17 Ohio St., 32, the opinion “by the court” reads:
“Held — Where a party keeps a billiard table, and permits persons to play upon it, for 20 cents a game, to be paid by the loser of the game, he is guilty of keeping such table for gain, *337 •within the meaning of Section 8 of the Act of March 12, 1831, ‘for the prevention of gaming’ (S. & C. Stat., 665), although such keeper of the table does not permit the players, as between themselves, to bet, and neither they nor other persons do bet on the issue of the game or games, in any other manner than that the loser of the game should pay the 20 cents for the use of the table.”
The statute there involved read so far as pertinent:
“That if any person * * * shall keep or exhibit, for gain, any gaming table * * * or any gaming device or machine of any kind or description * * *; or if any person * * * shall keep or exhibit any billiard table, for the purpose aforesaid; the person * * * so offending, shall * * * be fined * *
In that case, someone had to pay for playing on the billiard table. There was therefore a price. Also, each player ran the risk of having to pay that price and likewise had a chance to avoid payment. The avoidance of payment was apparently regarded as a sufficient prize. It would seem to follow necessarily that the right to play without payment, if a sufficient score is attained, constitutes a sufficient prize to make operation of a machine constitute gambling if the other elements of gambling are present. See also annotation, 148 A. L. R., 879, 882 et seq.
Plaintiff further argues that the “Skill Pool” type of machine does not come within the definition of a “gambling device” found in Section 13066-1, General Code (now Section 2915.16, Revised Code). This section was first enacted in 1951. At the time of its enactment and in the same act, Section 13066 was amended so as to add therein after the words “a gambling device or machine” the words “other than as is defined in Sections 13066-1, 13063 and 13064 of the General Code.” Thus, although the definition of “gambling device” as contained in Section 13066-1, General Code, may be so restricted as not to cover the “Skill Pool” type of machine, Section 13066, General Code, as amended at the same time as the enactment of Section 13066-1, General Code, clearly indicates that the General Assembly did not intend to restrict the term “gambling device” as found in Section 13066, General Code, except to the extent of making Section 13066, General Code, inapplicable to the type of *338 “gambling device or machine” described in Section 13066-1, General Code.
Plaintiff next argues that the “Skill Pool” type of machine is not a “gambling device or machine” because the determination as to whether an operator will get a sufficient score to be entitled to replay the machine free is not dependent predominately upon the element of chance but on the contrary is dependent, as the Common Pleas Court found, on the skill of the operator.
This argument must be rejected for at least two reasons. First, the Court of Appeals as the trier of the facts found that this type of machine was “predominately controlled by the element of chance.” As stated in the supplemental brief of plaintiff on the merits, “if the principle which is announced in the Kraus case is correct [we are so holding], and this case was properly before the Court of Appeals on law and fact [we are so holding], this cause should be affirmed.”
Also, in our opinion, the mere fact, that the determination, as to whether an operator will get a sufficient score to be entitled to replay the machine free, may be dependent on the skill of the operator, does not require the conclusion that such machine is not a gambling device or machine.
We realize that there are statements in the opinion in Kraus v. Cleveland, supra, which indicate that, if operation of a device is under the control of the skill of its operator, then such device might not be a gambling device. However, no such problem was before the court in that case because the ordinance there involved dealt with machines in which “the automatic or mechanical operation of the device, without the intervention of the skill of the player,” determined the result of the game. The question considered in that case was whether the mere emission by the machine of varying numbers of tokens having no intrinsic value, other than a possible use in replaying the machine, could support a conclusion that there was a prize involved in the operation of the machine.
It may be that, in order to have a lottery, the determination as to who gets a prize or how much of a prize he gets must be dependent at least predominately on the element of chance. *339 Stevens v. Cincinnati Times-Star Co., 72 Ohio St., 112, 73 N. E., 1058, 106 Am. St. Rep., 586. However, although a lottery is a species or form of gambling (see 34 American Jurisprudence, 647, Section 2; 54 Corpus Juris Secundum, 844, Section 1), the term “gambling” is broader and encompasses more than the term “lottery.” See State, ex rel. Dussault, v. Kilburn, 111 Mont., 400, 109 P. (2d), 1113, 135 A. L. R., 99, 103; State v. Hudson, 128 W. Va., 655, 664, 37 S. E. (2d), 553, 163 A. L. R., 1265, 1272. Thus, there may be gambling between parties where they stipulate for a price that the determination as to who shall gain or lose (i. e., get or not get the prize) shall depend upon the happening of an uncertain event in which such parties have no interest except that arising from the possibility of such gain or loss. See Kitchen v. Loudenback, 48 Ohio St., 177, 188, 189, 26 N. E., 979, 29 Am. St. Rep., 540. Also, although it would be inaccurate to say that there can be a gamble upon something certain, there can be a gamble on the happening of an event, the happening of which may be largely dependent upon skill, even the skill of a participant. This court so held in Ward v. State, supra (17 Ohio St., 32), although the authorities outside Ohio on this question are apparently in conflict. See annotation, 135 A. L. R., 104, 107, 108. Although there must be an element of chance in order to have gambling, that element can be supplied by having the happening of some future event determine who gets the prize or how much he gets, at least where that event is not certain to happen (see Lester v. Buel, 49 Ohio St., 240, 255, 30 N. E. (2d), 821, 34 Am. St. Rep., 556) and even though the happening of that event is dependent predominately upon skill. See also State, ex rel. Dussault, v. Kilburn, supra; United States v. 24 Digger Merchandising Machines (C. C. A. 8), 202 F. (2d), 647; Ankers v. Bartlett (1936), 1 K. B., 147; United States v. Frodenberg, 8 Alaska, 251; 24 American Jurisprudence, 407, Section 13. But see Rouse, Sheriff, v. Sisson, 190 Miss., 276, 199 So., 777, 132 A. L. R., 998.
Thus, even though operating the “Skill Pool” machine so as to get an opportunity to replay it free may be dependent on skill, its operation will not certainly result in such opportunity of a free replay and therefore such operation constitutes *340 “gambling” and such machine is a “gambling device or machine” within the meaning of Section 13066, G-eneral Code.
It follows that the judgment of the Court of Appeals must be affirmed.

Judgment affirmed.

Weygandt, C. J., Matthias, Hart, McClintock and Beil, JJ., concur.
McClintock, J., of the Fifth Appellate District, sitting by-designation in the place and stead of Stewart, J., pursuant to Section 2, Article IV of the Constitution.

It is unfortunate that this court and the Courts of Appeals of this state should be so frequently required to devote a substantial amount of time and effort in determining whether a case under consideration is or is not a “chancery case.” It would probably be better for litigants if that time and effort could be devoted to a determination of legal questions of substance. Since the amendment of Section 6 of Article IV of the Constitution, effective in 1945, the General Assembly has had an opportunity to specify with more particularity those cases, if any, which should be tried de novo on appeal. For example, it might well provide that, in any instance where a cause is tried in the Common Pleas Court without a jury, the Court of Appeals can substitute its judgment on the facts for the judgment of the Common Pleas Court. It has apparently endeavored to make a step in that direction. See Section 2501.02, Revised Code, as amended effective October 4, 1955 (126 Ohio Laws, S. 71). Apparently, the General Assembly has also now recognized that there is little justification for ever having any other substantial elements of a trial de novo in the Court of Appeals. See Section 2505.21, Revised Code, as amended effective October 4, 1955 (126 Ohio Laws, S. 71). Thus perhaps there has now been the “legislative action” contemplated by paragraph two of the syllabus of Youngstown Municipal Ry. Co. v. City of Youngstown, 147 Ohio St., 221, 70 N. E. (2d), 649. See also Section 2505.01, Revised Code, which in 1953 replaced Section 12223-1, General Code, and which no longer contains any statement to the effect that “the ‘appeal on questions of law and fact’ * * * shall inelude all the proceedings heretofore and otherwise designated as an appeal.” However, the instant proceeding was commenced in 1951, long before the effective date of these legislative actions.